Argued February 14, affirmed February 27, sustained on rehearing
March 27, 1917.

# BOWLES v. GANTENBEIN.

### (163 Pac. 308; 163 Pac. 1163.)

**Landlord and Tenant—Rights of Creditors of Tenant—Attachment.**

1. A general creditor of a lessee cannot be restrained from en-
forcing attachment against the leasehold on the theory that such a
creditor has no right to the profits of the leasehold until satisfaction
of the lessor's claim for rent, in the absence of allegation of insol-
vency of lessee, where the property is not in court, and the landlord
might, at any time, re-enter for default.

## ON REHEARING.

**Landlord and Tenant—Rent—Payment by Sureties—Rights Acquired.**

2. If sureties upon the payment of arrearages in rent are subro-
gated to the rights of the lessor, they cannot follow the property of
the lessee into the hands of purchasers for value without notice,
which by Section 301, L. O. L., includes a creditor who has attached,
or against third persons whose equities were acquired without objec-
tion by such sureties, where there is no showing of an effort to get a
court of equity to take custody of the property on the ground of in-
solvency of lessee, or that the lessee was not entitled to pledge the
lease.

**Landlord and Tenant—Distress—Common-law Remedy.**

3. If the common-law right of distress exists, and sureties for rent
under a lease succeeded to it by subrogation on paying arrearages in
rent, it would not be applicable to choses in action such as a debt for
rent due assignee of lease from the subtenants, since at common law
the landlord took the property of his delinquent tenant into his pos-
session and held the same as a pledge until the rent was paid, and the
debt of an undertenant was not capable of manual delivery, and hence
could not be taken by distress as a pledge.

[As to distress for rent, see note in 15 **Am. Dec.** 585.]

**Landlord and Tenant—Distress—Effect of Garnishment.**

4. The garnishment of a debt or chose in action due from subten-
ants to the assignee of a lease did not prejudice the right of distress,
if it existed.

**Landlord and Tenant—Attachment of Money Due Lessee from Subten-
ants—Priority.**

5. Where the obligation of the assignee of a lease to the assignee
of the original lessee's claim against it for the agreed consideration
for the assignment and his obligation to the sureties who have paid
arrearages of rent were both upon contract, there being nothing in
either claim to give either a preference, the assignee of the claim hav-
ing been more diligent by seeking to enforce his claim by attachment,
the sureties may not restrain him from proceeding with the attach-

ment, since, where the equities are equal, the law will prevail, and the right to attach inures to the one who is first in time to the exclusion or postponement of others.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 2. · Statement by MR. JUSTICE MOORE.

This is a suit by Joseph R. Bowles, Fred H. Rothchild and Frederick S. Stanley against Calvin U. Gantenbein to enjoin the prosecution of an action which defendant instituted against the Willamette Building & Realty Company, an Oregon corporation, and to secure the discharge of a levy of an attachment issued in that action. A demurrer to the complaint on the ground *inter alia* that it did not state facts sufficient to constitute a cause of suit was sustained. The plaintiffs declining further to plead the suit was .dismissed, and they appeal.                                    AFFIRMED.

For appellants there was a brief over the names of *Mr. John H. Hall* and *Mr. Jesse Stearns,* with an oral argument by *Mr. Hall.*

For respondent there was a brief over the name of *Messrs. Logan & Smith,* with an oral argument by *Mr. John F. Logan.*

MR. JUSTICE MOORE delivered the opinion of the court.

The material facts stated in the complaint are to the effect that on September 30, 1910, I. N. Fleischner and others leased real property, having a building thereon, in Portland, Oregon, for a term of 50 years to A. B. Widney, who agreed to pay as rent therefor $3,000 a month for the first ten years and greater rates thereafter, to begin on or before October 1, 1914, and speedily to complete on the demised premises, at his own expense of not less than $350,000, a new 6-story build-

ing with a basement in lieu of an old structure on the land, and also to pay the lessors all the taxes and assessments that might be levied against or imposed upon the real property. For the faithful performance of all these conditions, except the erection of the new building, the lessee as principal and the plaintiffs as sureties executed to the lessors a bond in the sum of $75,000. The lessee on October 17, 1910, with the consent of the lessors and of the plaintiffs, assigned all his interest in the lease to the Willamette Building & Realty Company, which corporation promised in writing to give the assignor $7,000 of its bonds to be issued to raise a fund with which to erect the new building, or at its option to pay that sum in money; the plaintiffs agreeing to remain liable for the performance of all the conditions specified in the bond. Owing to unforeseen obstacles the rents received by the corporation have been insufficient to pay the lessors the sums of money due them, and the plaintiffs in order to protect their rights and preserve the lease have been compelled to advance from their own funds $6,434.74 more than has been received. After the assignment of the lease its terms were so modified that the time within which the new building is to be commenced was extended to April 1, 1917. Widney assigned his claim against the corporation for $7,000 to the defendant herein, who, on May 4, 1915, commenced an action for the recovery of that sum with interest from February 1, 1914; and having caused to be issued a writ of attachment he garnished in the hands of the subtenants the rents due for March, April, and May, 1915. The initiatory pleading contains a clause which reads:

"The said Willamette Building & Realty Company is and has been at all times since its organization without assets or funds, except the said lease, and the rents received from the subtenants on said premises."

The plaintiff's counsel invoking the rule announced in the case of *Otis* v. *Conway,* 114 N. Y. 13 (20 N. E. 628), where it was held that the creditors of an insolvent lessee have no equitable claim to the profits issuing from leased land until after the landlord's claim for rent is satisfied, contend that the averments of the complaint bring their case within the legal principle so promulgated, and this being so, errors were committed in sustaining the demurrer and in dismissing the suit. In the case referred to the plaintiffs, on January 1, 1881, leased to Oscar Strasburger property in the City of New York for a term of five years at an annual rental payable on the first days of February, May, August, and November. Strasburger sublet a part of the premises and occupied the remainder until September, 1884, when he was adjudged a lunatic and his son Albert was appointed his committee and continued the business in which his father had been engaged at the same place until November 20, 1884. Pursuant to orders made by the court having charge of the lunatic's estate Albert paid to the plaintiffs the rent to February 1, 1885. During that month Albert's resignation was accepted by the proper court, which appointed in his stead the defendant, who continued to act as such guardian. Soon thereafter a dispute arose as to who was entitled to the rents for the year 1885, whereupon it was stipulated by all the interested parties that pending the controversy the money derived from that source from all but one of the tenants should be deposited in court to await its final order in the cause. Prior to his lunacy Oscar Strasburger leased a part of the land to Jacob Godhelp, who occupied the premises until January 1, 1886, the termination of the original lease. By agreement of the parties the rent received from the subtenant was deposited in a bank subject to the final

determination of the suit.    The disposition of these two
items of rent was the question considered by the court.
In deciding the case Mr. Justice BROWN remarks:

"We think that the plaintiff's claim to have the God-
help rent paid to them is well founded.    The lunatic's
estate is insolvent, and will pay but a small percentage
upon the debts conceded to exist against it.    Techni-
cally, rent is something which a tenant renders out of
the profits of the land which he enjoys.    Equitably, it
is a charge upon the estate, and the lessee, in good con-
science, ought not to take the profits thereof without a
due discharge of the rent.    (Citing cases.)    The cred-
itors of an insolvent lessee can have no moral or equi-
table claim to the profits issuing from leased land, until
after the landlord's claim for rent is satisfied."

The language so employed should be interposed in
the light of the facts involved. . There the lunatic's
estate was in legal custody and under the control of the
guardian.    The court having thus obtained jurisdiction
of the subject matter and of the person of the lunatic
would not allow the original landlords to re-enter so
long as the rent reserved by the lease was being paid
by the under-tenant and the money so received was
held subject to final judicial determination.    It would
have been a travesty on justice to have held in that case.
that while the landlords could be deprived of their
right to declare a forfeiture of the lease, the rent to
which they were entitled and which should have been
paid to them could be divided among the general cred-
itors of the lunatic's estate.    Any other conclusion
would have been equivalent to a confiscation of the
rents without the landlords' consent or power to pre-
vent the appropriation of their property to a private
use, for they could not, without the consent of the
court, interfere with the committee's right of posses-
sion of the demised premises.    Other decisions relied

upon by plaintiff's counsel are to the same effect. Thus in *Bredell* v. *Fair Grounds Real Estate Co.,* 95 Mo. App. 676 (69 S. W. 635), a receiver having been appointed a like conclusion was reached as in the preceding case. So too in *Riggs* v. *Whitney,* 15 Abb. Pr. (N. Y.) 388, it was held that the rents which came from the under-tenants of a judgment debtor into the hands of a receiver were not subject to distribution among the creditors until the claim of the original landlord for rent had been extinguished. To the same effect see also 2 Taylor's Land. and Ten. (9 ed.), § 659.

The complaint in the case at bar does not allege that the corporation, which is the present lessee of the real property, is insolvent. We do not, however, rest our decision on the absence of such averment, though that would be sufficient to sustain the action of the court in its ruling upon the demurrer if the plaintiffs' theory were to prevail. The demised property is not in the custody of the law, and this being so there is nothing to prevent the original landlords from re-entering the premises for a default in failing to keep the covenants of the lease. It is unnecessary to consider other questions presented by counsel for the respective parties.

No error was committed as alleged, and the decree is affirmed.                                    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE BURNETT concur.

MR. JUSTICE MCCAMANT taking no part in the consideration of this case.

Former opinion sustained March 27, 1917.

ON PETITION FOR REHEARING.

(163 Pac. 1163.)

Department 2.    Statement by MR. JUSTICE BURNETT.

For brevity's sake in this opinion we refer to the original lessors as the Fleischners; and to the present tenant, The Willamette Building & Realty Company, as the company. It will be remembered that the Fleischners leased certain realty to Widney with whom the plaintiffs here gave their collateral bond to the lessors agreeing to pay any sum of money that he might fail to pay under the lease. With the assent of the sureties and of the Fleischners, Widney assigned the lease to the company on its promise to issue to him $7,000 of first mortgage bonds or pay him that amount in cash. The defendant, as assignee of Widney's claim, after waiting until the expiration of the company's option to issue bonds, which it failed to exercise, brought action against it to recover $7,000 in money and caused a writ of attachment to issue garnishing the subtenants of the company. Claiming to have been compelled to pay to the Fleischners $6,434.74 as arrearages of rent and taxes, the plaintiffs bring this suit to restrain the defendant from proceeding with his attachment until they have been fully reimbursed for their expenditures. They say that the company is without assets or funds except the lease and the rents received from the subtenants, which returns are insufficient in amount to meet the requirements of the lease. That instrument provides, as plaintiffs state, that the tenant may pledge the same and his leasehold interest in the property to secure money with which to pay for a new building or to satisfy rents or other sums required of him. The

agreement with Widney under which the defendant is claiming in his attachment action was executed by the company by Fred H. Rothchild, as President, and F. S. Stanley, as Secretary, both of whom are plaintiffs in this action. A demurrer to this complaint was sustained in the Circuit Court whereupon the suit having been dismissed on the plaintiffs refusing to plead further, they appealed.

FORMER OPINION SUSTAINED ON REHEARING.

*Mr. John H. Hall* and *Mr. Jesse Stearns,* for the petition.

*Messrs. Logan & Smith, contra.*

MR. JUSTICE BURNETT delivered the opinion of the court.

In an opinion by Mr. Justice MOORE, filed February 27, 1917, the decision of the Circuit Court was affirmed. By their petition for rehearing the plaintiffs contend substantially that as against all comers the landlord is entitled to his rent and, until he is satisfied, no other creditor of the tenant can interfere with what is coming from the subtenants; and further that having paid the arrearages they are subrogated to the rights of the Fleischners and are entitled, as against the defendant here, to realize upon what is due to the company from its immediate subtenants.

The plaintiffs placed much reliance upon 1 Story's Eq. Jur. (13 ed.), § 687. The learned author, treating of equitable jurisdiction relating to rents, states that there is no privity between the original landlord and the subtenant, and that while the goods of the latter are liable to be distrained for his principal's unpaid rent, yet no action would lie in favor of the senior lessor against the under-tenant on the covenants of the

lease for want of such privity of contract. However, upon the supposition that the original lessee is insolvent and unable to pay the rent he says:

"Undoubtedly there would be no remedy at law. But it is understood that in such a case courts of equity would relieve the lessor and would direct the payment of the rent to the lessor upon a bill making the original lessee and the undertenant parties. For if the original lessee were compelled to pay the rent, he would have a remedy over against the undertenant."

No such case, however, is presented by this complaint. The lessors are not here complaining. They have realized upon their security and their rent is satisfied. Neither the tenant nor the subtenant is made a party to this suit. Indeed it is not a suit to apply the amount due from the subtenant in discharge of rent due to the first landlord, but is an attempt to stay the hand of a creditor of the company who is more diligent than the plaintiffs.

In Section 684c, of the same volume of Story the rule is laid down thus:

"The general doctrine of courts of equity certainly is, that where the party entitled to rent has a complete remedy at law, either by an action or by distress, no suit will be entertained in equity for his relief; and the cases in which a suit in equity is commonly entertained are of the kind above mentioned; namely, such as stand upon some peculiar equity between the parties, or where the remedy at law is gone without laches, or where it is inadequate or doubtful. It is not enough to show that the remedy in equity may be more beneficial if the remedy at law is complete and adequate, or even to show that the remedy at law by distress is gone if there be no fraud or default in the tenant."

In *Kemp* v. *San Antonio Catering Co.,* 118 Mo. 124 (93 S. W. 342), the plaintiff was the tenant, sued for an accounting with his subtenants and had a receiver

appointed for the property. The defendants paid their stipulated rent into court. The plaintiff conceded it was in turn due to his landlord who intervened and asked that it be paid accordingly. Equity having taken custody of the property and thus having prevented the original lessor from collecting his rent by garnishment of the subtenants, protected him and awarded him the money admitted by plaintiff to be due, especially as the accumulation of the fund depended upon the first lessor not re-entering for the original tenant's default. In other words, equity would not seize upon and hold the landlord with one hand and rob him with the other, especially as he had it in his power to re-enter for condition broken and thus destroy the only source of the fund in dispute. *Otis* v. *Conway,* 114 N. Y. 13 (20 N. E. 628), was a case similar in the aspect that the property was in the custody of an equity court which being true, that tribunal would administer the whole question. *Forrest* v. *Durnell,* 86 Tex. 647 (26 S. W. 481), cited in the petition for rehearing depends upon a statute giving a landlord a lien upon crops of whatever tenant may be in possession and forbidding subletting without the first lessor's consent. *Collins* v. *Whilldin,* 3 Phila. (Pa.) 102, does not disturb the priority of a previous attachment but only protects the subtenant in his payment to the original lessor as against a subsequent execution. The same is true of *Thompson* v. *Commercial Guano Co.,* 93 Ga. 283 (20 S. E. 309). There is no pretense in the present complaint that any equitable tribunal has taken charge of the property. This feature alone would render inapplicable the precedents cited in support of the petition for rehearing.

2. The plaintiffs maintain that they are subrogated to the rights of the Fleischners but, for all that, these

sureties cannot follow the property of the company into the hands of purchasers for value without notice or assert their rights as against execution creditors or against third persons whose equities were acquired without objection on their part: 37 Cyc. 428. The defendant having attached, is deemed to be a purchaser in good faith: Section 301, L. O. L. The plaintiffs do not impute to him any notice of their claim. No showing is made of any effort to get a court of equity to take custody of the property on the ground of the insolvency of the company or for any other reason. It is not shown but that the company of which two of the plaintiffs are officers, might not pledge its lease for the erection of a building or for the payment of the rent and thus tide over a depression in business so as to escape insolvency.

3, 4. The only remedies the Fleischners had against the subtenants whom the defendant had garnished were this same right to attach the company's debt owing from them or the possible distraint of their goods as at common law. The right to attach inures to the one who is first in time to the exclusion or postponement of plaintiffs in subsequent writs. We may well doubt if the common-law right of distress has not fallen into innocuous desuetude in this state; but even if it exists and conceding that by subrogation the plaintiffs succeeded to it on payment of the company's arrearages, yet it would not be applicable to choses in action as for instance to a mere debt for rent due from the subtenant: *Davis* v. *Arledge,* 3 Hill Law (S. C.), 170 (30 Am. Dec. 360). The reason of this is that at common law the landlord took the property of his delinquent tenant into his possession and held the same as a pledge until the rent was paid. The debt of the under-tenant was not capable of manual delivery and hence could not

be taken by distress as a pledge. Moreover, there is nothing in the complaint before us to show that the tenants had anything subject to distress. We infer from the pleading that the defendant simply garnished the debt or chose in action due from the subtenants to the company. By this the right of distress, even if it is in force was not prejudiced.

5. In brief, the defendant holds a contract debt against the company. Its obligation to the plaintiffs is likewise upon contract. The two are in the same class. There is nothing in either claim to give one preference over the other. Where the equities are equal the law will prevail. The defendant, being the more diligent in seeking to enforce his claim, has attached and there is nothing in the demand of the plaintiffs to give them priority over him or to stay his hand. For these reasons we adhere to the former opinion.

AFFIRMED. SUSTAINED ON REHEARING.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BEAN concur.

MR. JUSTICE MCCAMANT took no part in the consideration of this case.