Argued November 23, 1921, affirmed January 17, rehearing denied
March 7, 1922.

# GANTENBEIN *v.* BOWLES ET AL.

(203 Pac. 614.)

**Equity Regards the Substance, and not the Form.**

1. Equity does not usually concern itself as much in regard to
form as it does to substance.

**Abatement and Revival—Failure to Substitute Administrator on
Plaintiff's Death Until After Entry of Judgment Cured by
Subsequent Substitution.**

2. Where plaintiff died while court had case under advisement,
the failure to substitute plaintiff's administrator as plaintiff until
four days after the entry of the judgment was cured by the sub-
sequent substitution of the administrator as the plaintiff.

**Corporations—Equity Held not Without Jurisdiction of Creditor's
Suit to Subject Rents in Directors' Hands to Payment of Debt
Because Creditor had a Remedy on an Injunction Bond.**

3. Equity is not without jurisdiction of a suit by a creditor
against directors to subject to payment of plaintiff's debt rents
which they assigned to themselves, and for an accounting as to
the amount thereof in their hands because the directors had
furnished a bond to restrain plaintiff from attaching such rents,
and thus gave him a remedy at law, since action on the bond
could not furnish adequate relief.

**Equity—Defendants, having Submitted Facts to Equity Jurisdic-
tion, Could not Complain That Plaintiff's Remedy was at Law.**

4. Defendants, having by their answers submitted facts to the
equity jurisdiction of the court, could not complain that plaintiff
had an adequate remedy at law and was not entitled to relief in
equity.

**Corporations—Corporation Held not a "Going Concern" Within Rule
That Trust Fund Doctrine is Inadmissible to Going Concern.**

5. Where corporation organized to take over leases and con-
struct building on leased land had abandoned construction of new
building because of failure to obtain a loan, and had assigned the
right to the rents from tenants in the existing building to the
directors and was without funds, the corporation was not a going
concern within the rule that the trust fund doctrine precluding a
corporation from preferring its directors as creditors is inapplicable
to a going concern.

**Evidence—Corporate Directors Presumed to Know Financial Con-
ditions.**

6. Directors of corporations are presumed to know its finan-
cial conditions.

Corporations—When Corporation is Insolvent or in Condition of
    Probable Suspension, Officers cannot Prefer Themselves to
    Prejudice of General Creditors.

7. Where a corporation is insolvent or has reached such a con-
dition that its directors or officers see that they must deal with its
assets in view of its probable suspension, they cannot use those
assets to prefer themselves as creditors or sureties in respect to
past advances to the prejudice of general creditors.

Judgment—Adjudication as to Corporation's Creditor's Rights to
    Subject Rents to Payment of Debt Res Judicata in Subsequent
    Action Between Same Parties.

8. Judgment. denying directors of a corporation an injunction
restraining its creditors from attaching rents due the corporation
as lessee, from subtenants was *res judicata*, as to the creditor's
right to subject rents to payment of his debt in his subsequent
action against the directors, after corporation's assignment of rents
to directors, to subject rents, collected by them to payment of
his debt.

Corporations—Amount Paid by Directors to Procure Their Release
    as Sureties Under Lease to the Corporation not Debt Due
    Them from Corporation.

9. Where directors of corporation organized to construct new
building on leased land paid lessors a certain amount to relieve
themselves as sureties under the terms of the lease held by the
corporation, after the corporation had become insolvent and the
construction of the new building had been abandoned, they were
not entitled to have amount so paid prorated as an indebtedness
to them from the company, since the payment was not a loan to
the company, and did not benefit the company, but was merely
a payment whereby the directors bought their releases as sureties.

Appeal and Error—Plaintiff not Appealing from Judgment will be
    Deemed Satisfied on Defendant's Appeal.

10. On defendant's appeal from judgment for plaintiff, the court
will not increase the judgment in plaintiff's favor, since the plain-
tiff, not having appealed from the decree, is deemed satisfied with
the findings and decree.

From Multnomah:  H. H. BELT, Judge.

Department 2.

This is a suit by C. U. Gantenbein against Joseph
R. Bowles, Fred Rothchild and Frederick S. Stanley,
to subject the funds of the Willamette Building &
Realty Company, a corporation, to the payment of the
corporate debts and for an accounting by reason of
certain acts of the directors in assigning to them-
selves rents of subtenants under a lease known as the

Fleischner lease which the corporation held as original lessee. The cause came on for final hearing on October 30, 1919. After hearing the testimony of the witnesses in support of the issues in the suit and the arguments of counsel, and after the cause was submitted, the court not being fully advised in the premises and by reason of other business, took the case under advisement. While the cause was under advisement the plaintiff, C. U. Gantenbein, died on November 19, 1919. The death of plaintiff having been suggested by the attorneys for the respective parties, the court rendered a decree to be effective as of October 30, 1919. Findings of fact and conclusions of law were made and entered as of that date, for which the court found that plaintiff was entitled to a judgment and decree against the defendants in the sum of $7,305.43, subject to the right of defendants to a *pro rata* share for the sum of $8,305.44, with the amount due plaintiff, resulting in an amount of the judgment in favor of plaintiff in the sum of $3,879.17, with interest thereon from October 30, 1919. The judgment was entered December 8, 1919. On December 12th, of that year A. E. Gantenbein, administrator of the estate of C. U. Gantenbein, deceased, was substituted as plaintiff in the cause. The defendants appeal from the decree, assigning errors. No appeal was taken by plaintiff.

The facts in the suit are substantially as follows: The Willamette Building & Realty Company, a corporation, which will hereafter be referred to as the Company, secured a lease to certain premises on the corner of Third and Morrison Streets in the City of Portland. The defendants were the sole stockholders of the Company, and the directors from the time of its inception until it went out of existence. The

lease of the property was first obtained by one Widney, who on October 17, 1910, transferred it to the defendants who organized the Company. Widney was to receive $7,000 in bonds to be thereafter issued, secured by mortgage on a building which the contract required Widney to erect on the leased premises. Widney later assigned this claim against the Company to C. U. Gantenbein. On March 27, 1915, Gantenbein sued the Company on the Widney claim. On October 6, 1915, Gantenbein obtained judgment in that action against the Company for $7,555.33 with $28 costs. On account of a stringency in the money market the Company failed to construct the building required by the contract, but kept its lease on the property and sublet the old building thereon to various tenants. When Gantenbein instituted the action he procured an attachment and garnished the various subtenants of the Company and realized about $1,700 from the rents due from the subtenants for the months of April and May, 1915, which was credited on the judgment. It is contended by plaintiff that the entire relation of the subtenants to the Company was subjected to the garnishment from its levy until judgment. In May, 1915, while the Gantenbein action and garnishment proceedings were pending, the defendants herein brought a suit to enjoin Gantenbein from attaching the Company's property and garnishing its tenants. They executed an injunction bond in the sum of $1,000. Gantenbein was enjoined until the further order of the court from attaching any of the rents due from the subtenants to the Company. A demurrer to the complaint in the injunction suit was sustained and the case dismissed by the Circuit Court. This decree was sustained upon appeal to this court: See *Bowles* v. *Gantenbein,*

83 Or. 510, 516 (163 Pac. 308, 163 Pac. 1163). On
May 28, 1915, while the injunction suit was pending,
the Company by resolution of the board of directors
transferred the rents to become due from the various
subtenants to the directors, the defendants herein.
During the months of June, July and August there
was collected from such rents the sum of $6,700.
After the injunction suit was determined in this
court and the mandate filed in the Circuit Court, on
March 1, 1919, Gantenbein instituted this suit against
defendants, who were sureties for the payment of the
rent to the Fleischners on the original lease and the
sole stockholders, directors and officers of the Com-
pany, to recover the balance unpaid on his judgment,
then amounting with interest to $7,024.45. Some time
in September, 1915, the defendants paid the
Fleischners the sum of $37,500 to relieve themselves
as sureties under the terms of the lease, and to
relieve the corporation from the terms of the original
lease, and the lease was canceled.

Plaintiff alleges in his complaint in part as follows:

"That after the plaintiff, C. U. Gantenbein, had
obtained his judgment against said company in
October, 1915, and had entered the mandate of the
Supreme Court in the cause set out in paragraph
XVII, he attempted to realize on said judgment by
garnishment and execution upon the tenants of said
company, but was hindered, delayed, and prevented
from realizing on said garnishment or said execution
because of the acts of the individual defendants as
the only officers, stockholders and directors of said
company in transferring and preferring themselves
for their own use and benefit, the rents due from
said subtenants to the said company for the months
of June, July and August, 1915, * * which sums
so due and so collected as aforesaid amounted to the
sum of $7,650, which said last-named sum the indi-

vidual defendants received in trust for the said C. U. Gantenbein, plaintiff therein and herein."

The position of the defendants is explained to a large extent by that portion of their answer which reads thus:

"That by reason of the garnishment issued by said C. U. Gantenbein in said action against the Willamette Building & Realty Company all the revenues derived from the rentals would be diverted from the purpose of paying the rentals reserved in said lease and the consequence would be that the lease would be forfeited and all moneys advanced by these defendants together with all other assets of the corporation be lost to the corporation.

"That thereupon for the benefit of the corporation in good faith and in order to preserve the only asset of the corporation and to keep said asset alive, these defendants received the rents and profits of the real estate so leased to said tenants by the Willamette Building & Realty Company for the months of June, July and August, 1915, and disbursed them for that purpose by paying the rent due under the lease from the said Fleischners to the said Willamette Building & Realty Company.

"That all the moneys received by the defendants for the months of June, July and August, 1915, were not sufficient to pay the lessors the rents reserved under the lease, but that the defendants herein used all moneys so received together with such additional money as was necessary, which they themselves supplied and advanced and paid same to said Fleischners, lessors named in said lease, and they never received for their own use or benefit any of said moneys or any part thereof, or never applied said money so received or any part thereof either to their own use or for the reduction of their own claims against the corporation."

The trial court found that all of the $6,700 collected for rent from the subtenants for the months of June,

July and August, 1915, should be considered a trust fund and that the plaintiff herein should prorate with the other *bona fide* creditors of the Company in the disposition thereof, holding that the moneys advanced by the defendants to the amount of $8,305.44 for the Company was a *bona fide* existing debt.

AFFIRMED.    REHEARING DENIED.

For appellants there was a brief over the name of *Messrs. Bernstein & Cohen,* with an oral argument by *Mr. Alex. Bernstein.*

For respondent there was a brief over the names of *Mr. I. N. Smith* and *Mr. John F. Logan,* with an oral argument by *Mr. Smith.*

BEAN, J.—1. As a preliminary question the defendants submit that the court had no authority to enter the order on November 19, 1919, that the judgment should take effect as of October 30, 1919. Defendants suggest that there is a conflict of authority as to the power of the court under such circumstances. It should be remembered that there is no question but that the amount of the judgment was due to plaintiff when he instituted this suit. It was not the ordinary *nunc pro tunc* judgment.

2. The failure of the court to substitute the administrator as plaintiff until four days after the entry of the judgment was an irregularity or matter of form, under the circumstances of this case. A court of equity does not usually concern itself as much in regard to form as it does to substance: *Burk* v. *Ross,* 68 Conn. 29 (35 Atl. 763, 57 Am. St. Rep. 60). However, we think the court had authority to enter the judgment, and that the irregularity, if any, was cured by the substitution of the adminis-

trator as plaintiff. In *Mitchell* v. *Scoonover*, 16 Or. 211 (17 Pac. 867, 8 Am. St. Rep. 282), the syllabus reads:

"Where a party has so prosecuted his action that he is entitled to a judgment without further contest, or where by delay of the court he fails to obtain judgment when he is entitled to it, and his adversary dies, it is the duty of the court upon proper application to render judgment in favor of such party as of a time when the adverse party was living."

In the *Dartmouth College Case*, 4 Wheat. (U. S.) *714 (4 L. Ed. 629), we read:

"Upon the suggestion of the plaintiff's counsel, that the defendant had died since the last term, the court ordered the judgment to be entered *nunc pro tunc* as of that term, as follows."

1 C. J. 166, Section 283, reads:

"An action abates on the death of plaintiff or defendant after trial and before a verdict is rendered, unless the rule is changed by statute. But in courts of equity it is the practice, when a party dies after a cause has been submitted upon the final hearing, for the court, notwithstanding, to go on and render its decision and direct a final decree to be entered up as of the day when the cause was submitted for decision; and the same practice has obtained in some jurisdictions in courts of law."

3. The defendants also urge that the plaintiff had a plain, speedy and adequate remedy at law, and therefore is not entitled to relief in equity. This is claimed by reason of the defendants having furnished a bond in the sum of $1,000 in the injunction suit, to restrain the plaintiff from attaching the rents reserved in the sublease to satisfy his judgment. This suit is in the nature of a creditors' suit to subject the assets of the Company in the hands of

its directors to the payment of the corporate debts. At the time of the institution of the suit the plaintiff was not informed of the amount of rents that had been collected by the directors, and seeks an accounting to ascertain the amount of such collections. The facts disclosed in the suit render it appropriate for equitable cognizance.

4. Moreover the defendants by their answer have submitted the facts in the case to the equity jurisdiction of the court. Plaintiff had obtained his judgment, endeavored to satisfy the same, and exhausted his legal remedy except for the $1,000 bond. The fact that the defendants had furnished a bond with sureties would not prevent the plaintiff from proceeding against the defendants without the sureties, if he chose to do so. It is apparent that an action upon the bond would not furnish adequate relief. We therefore pass to the merits of the case.

It is contended on behalf of defendants in regard to the assignment of the rents due from the subtenants of the Company and the leases from the Company to the subtenants, on May 28, 1915, that the Company was then a going concern and that the trust doctrine does not apply to the assets of the Company. The law is stated in the brief of the learned counsel for defendants, thus:

"In order that the trust doctrine may apply to corporations, a corporation must either have suspended its business and become insolvent or its assets placed in possession of the Court, and also ceased to be a going concern. (Citing) *Sabin* v. *Columbia Fuel Co.*, 25 Or. 15 [45 Am. St. Rep. 756, 34 Pac. 692, 35 Pac. 854]; *Garretson Hilton Lbr. Co.* v. *Hinson*, 69 Or. 609 [140 Pac. 633]; *Childs* v. *Carlstein Co.*, 76 Fed. 86; *Oil Co.* v. *Marbury*, 91

U. S. 587 [23 L. Ed. 328, see, also, Rose's U. S. Notes]."

It seems appropriate first to notice the condition of the Company at that time and its prospects, or what might reasonably be supposed the outcome would be. It appears that the Company was organized for the purpose of obtaining leases of property and constructing a building thereon at a cost of $350,000, and subletting such leased property. It depended for gain upon the rents it should receive in excess of the ground rent it was required to pay.

5. In May, 1915, the construction of the contemplated building had been abandoned, on account of the failure to obtain a loan to finance the construction. In the fall of 1914, the Company was unable to pay the taxes required to be paid by the terms of the lease from the Fleischners. The directors gave their personal note for $5,703.75 to the Fleischners, for the Company, in payment of an advancement for taxes. These taxes were never paid by the Company, the directors, Messrs. Bowles, Rothchild and Stanley, being required to pay the note themselves. As stated by Mr. F. S. Stanley, who was called as a witness for plaintiff, the only asset that the Company had was the lease from the Fleischners and the rents coming in from the subtenants. Mr. J. R. Bowles testified as a witness for defendants, and stated that the obligation to the Fleischners was $3,000 a month; that the taxes amounted to about $11,000; and that the running expenses of the building, the insurance, etc., made the total carrying charges of the Company for 1915 at least $1,500 a month more than the receipts. The rent due to the Fleischners had been reduced to $2,500 per month. In February, 1915, the account in the bank at which

the Company did business showed a balance of two cents. This balance was maintained until after May 28th, of that year. After that the moneys received for such rents were deposited in a bank at Hood River, in the name of "F. S. Stanley, Special Account." As stated by Mr. Stanley, the Company did not have sufficient funds at that time to pay its debts. On May 28th, at a meeting of the board of directors of the Company, at which all were present, we find this record made:

"The President stated that the meeting had beeen called for the purpose of protecting the sureties as far as might be possible for the amount of rent and taxes which they had been compelled to pay under the terms of the bond given to the lessors of the property at the corner of Third and Morrison Streets at the time of the execution of the lease;

"And it appearing that the sureties had been compelled to pay under the obligations of said bond upwards of Six Thousand Dollars ($6000) above the total net rentals received by this Corporation, and that they are obligated to pay other sums to prevent the forfeiture of said lease,—

"Now, therefore, on motion duly made and seconded, it is unanimously—

"RESOLVED: That this Corporation, Willamette Building & Realty Company, do forthwith assign to Fred H. Rothchild, Joseph R. Bowles and Frederick S. Stanley, sureties on said bond, through their proper officers, who are hereby authorized and directed to execute such assignments, the following leases, to wit: * * *"

Then follows a description of seven leases of the Company to various subtenants.

"Together with all rents due and to grow due thereunder."

This is the last meeting of the directors of the Company shown in the secretary's minute-book.

Mr. Bowles testified:

"Q. Now hold on, wait a minute, you did not pay money back to Bowles, Stanley and Rothchild by reason of the note of September 4th, 1914?

"A. No, but it was the intention at the time of making the assignment to pay back the money. It was the intention at the time of making the assignment to the individuals to apply the moneys upon the indebtedness due the individuals of approximately six thousand dollars advanced prior, which was the liability of the Company to the individuals prior to Gantenbein's first action.

"Q. Mr. Bowles, you did not do so, did you?

"A. No, we changed our course of procedure after making assignments and decided to hold the money and pay it over to the Fleischners.

"Q. You paid all the money over to the Fleischners?

"A. Yes, and to the operation of the building."

6. From the above statement, which we have taken from the record, it seems to us that at the time this suit was commenced the Company was not a "going concern" within the meaning of the law. It had but two cents in money, was insolvent, and by the assignment to its directors had placed itself beyond its power to receive a cent in the ordinary course of its business. While it was legally responsible to the Fleischners for the monthly rental, the collection of its only assets had been turned over and its income assigned to its directors. The corporation was from a practical standpoint financially impotent. The directors are presumed to know, and it appears that they did know, the financial condition of the Company.

The contention of defendants that the Company was a going concern is predicated upon the fact that in May, 1915, the Company was the owner of the lease from the Fleischners and that this was a

valuable property right. As above noted, after May 28th of that year, the Company was legally, although not financially, responsible for the payment of the ground rent; but it had incapacitated itself from collecting any of the rents from its subtenants and had assigned the same to its directors to secure precedent indebtedness. The transaction was not for a present loan to enable the Company to carry on its business. Granting the rule that a corporation may dispose of its property the same as an individual, we venture the assertion that any person under like conditions as prevailed at that time would not be permitted to place all his property beyond the reach of a judgment creditor for the purpose of defeating the judgment claim, when such creditor was making every effort to obtain satisfaction of his judgment. This has to do more particularly with the circumstances prevailing about the time of the attachment. The present suit was commenced on March 1, 1917, long after the Company had ceased to do business and disposed of all its property.

We find in 4 Words & Phrases, 3103:

" 'Going business or establishment' is a term applied to a corporation which 'is still prosecuting its business with the prospect and expectation of continuing to do so, even though its assets are insufficient to pay its debts.' *Corey* v. *Wadsworth,* 99 Ala. 68 (11 South. 350, 353, 42 Am. St. Rep. 29, 23 L. R. A. 618)."

7. By the great weight of authority, where a corporation is insolvent or has reached such condition that its directors or officers see that they must deal with its assets in the view of its probable suspension, they cannot use those assets to prefer themselves as creditors or sureties in respect to past advances to

the prejudice of general creditors: 14A C. J. 901, § 3080. In support of this statement numerous cases are cited from the Supreme Court of the United States and many states of the Union, including *Craig* v. *California Vineyard Co.,* 30 Or. 43 (46 Pac. 421).

The point of time at which the directors lose power to prefer themselves as creditors, and at which the trust fund rule attaches is defined in 10 Cyc. 1056, thus:

"This obligation to hold the assets of the corporation as a trust fund for equal distribution among its creditors attaches to the directors, not only when they have voted the corporation to be insolvent, but whenever the fact that it must discontinue business by reason of the insolvency comes to their knowledge. This knowledge of insolvency is not, and cannot from the very nature of things be a positive knowledge. It is a reasonable belief founded upon probabilities having reference to the company's affairs. It is sufficient to put an end to the right of directors to prefer themselves as creditors for them to know that it is probably insolvent * * ."

7 R. C. L. 760, Section 775, reads in part thus:

"It would seem that the position denying the right of directors of an insolvent corporation to obtain a preference by way of security for or payment of debts due them by the corporation, should not be founded upon the trust fund doctrine but is sustainable upon the theory that it is inequitable that a director, whose position as to knowledge of conditions and power to act for the corporation gives him an advantage, should be permitted to protect his own claim to the detriment of others, at a time when it is apparent that all the unsecured debts of the corporation are equally in peril, and that all of them cannot be paid."

From the opinion in the case of *Corey* v. *Wadsworth,* 99 Ala. 68 (11 South. 350, 42 Am. St. Rep. 29, 23 L. R. A. 618), cited by defendant, we quote the following:

"We feel safe in declaring that when a corporation's assets are insufficient for the payment of its debts, and it has ceased to do business, or has taken, or is in the act of taking, a step which will practically incapacitate it for conducting the corporate enterprise with reasonable prospect of success, or its embarrassments are such that early suspension and failure must ensue, then such corporation must be pronounced insolvent."

An exception to the rule which denies the right to prefer creditors is recognized in some jurisdictions in cases where the corporation, although insolvent, is a "going concern" at the time of the preference, doing business in the ordinary way. Under such circumstances preferences to particular creditors are sustained if made in good faith: 14A C. J. 899, § 3076. As to the rule in this state, see *Sabin* v. *Columbia Fuel Co.,* 25 Or. 15 (34 Pac. 692, 35 Pac. 854, 42 Am. St. Rep. 756); and *Garetson Lbr. Co.* v. *Hinson,* 69 Or. 605 (140 Pac. 633).

The rule rests upon the basis that a corporation has the same right as an individual to prefer general creditors, and in so far it merely involves a repudiation of what has been known as the trust fund doctrine. Under its operation the assets of the corporation, although insolvent, are not a trust fund for its creditors in any sense other than that in which the assets of a partnership or an individual are a trust fund for its creditors: 14A C. J. 897, § 3074. It is declared in that volume, page 898, Section 3075, thus:

"It is an essential to the validity of a preference under the rule authorizing the giving of preferences that it should be honestly made to secure or distinguish a *bona fide* debt, and the right must be exercised without regard to the personal interest of the persons to whom the corporation intrusts its exercise."

The State of Oregon has adopted the trust fund doctrine: *Williams* v. *Commercial Bank,* 49 Or. 492 (90 Pac. 1012, 91 Pac. 433, 11 L. R. A. (N. S.) 857); *Macbeth* v. *Banfield,* 45 Or. 553 (78 Pac. 693, 106 Am. St. Rep. 670). In the Williams case the preferences given to a stockholder were set aside. In *Corbett* v. *Woodward,* 6 Fed. Cas. 531, an opinion by Judge DEADY, the syllabus reads:

"The directors of a corporation are trustees for the stockholders and creditors; and where a director by means of his power, as such, secures to himself any advantage over other stockholders, or creditors, equity will treat the transaction as void, or charge him as trustee for the benefit of the injured parties; nor can such director, as to such parties, claim to have acted in ignorance of what it was his duty to know concerning the conduct and condition of the affairs of the corporation."

The states which recognize the trust fund doctrine hold that directors of a corporation cannot prefer themselves over general creditors for the security of precedent debts, nor can a director who is surety upon a corporate obligation take any preference over other creditors: 10 Cyc. 1246–1256; 7 R. C. L. 757, 759; *Lippincott* v. *Shaw Carriage Co.,* 25 Fed. 577; *Beach* v. *Miller,* 130 Ill. 162 (17 Am. St. Rep. 291); *Corey* v. *Wadsworth,* 99 Ala. 68 (11 South. 350, 42 Am. St. Rep. 29, 23 L. R. A. 618); *Conover* v. *Hull,* 10 Wash. 673 (39 Pac. 166, 45 Am. St. Rep. 810); *Hogan* v. *Price River Irr. Co.,* 55 Utah, 170 (184 Pac.

536); *Weil* v. *Defenbach,* 31 Idaho, 258 (170 Pac. 103); *Hanson* v. *Choynski,* 180 Cal. 275 (180 Pac. 816); *Olney* v. *Conanicut Land Co.,* 16 R. I. 597 (18 Atl. 181, 27 Am. St. Rep. 767 and note, 5 L. R. A. 361).

In the present case it should be remembered that the indebtedness for which the directors preferred themselves was a past indebtedness. See *Beach* v. *Miller,* 130 Ill. 162 (22 N. E. 164, 17 Am. St. Rep. 291), and *Illinois Steel Co.* v. *O'Donnell,* 156 Ill. 624 (41 N. E. 185, 47 Am. St. Rep. 245, 31 L. R. A. 265), where the court said at page 634:

"There is a marked difference between a case where a mortgage or other preference is given by an insolvent corporation to a director or officer to secure a pre-existing indebtedness, and a case like this, where the corporation, though in fact insolvent, in the sense above stated, is a going corporation that is seeking to accomplish the objects of its incorporation, and the security is given to directors for moneys actually and in good faith loaned, at the time the security is given, to such embarrassed corporation, and for its benefit."

It is the position of defendants that after the assignment of the rents was made they changed their plan and applied the money so obtained in payment of the rents due to the original lessors, and that the rents from the subtenants should first be so applied. This claim was asserted, litigated, considered and determined in the case of *Bowles* v. *Gantenbein,* 83 Or. 510. In that case these defendants, who were there plaintiffs, contended that as against all comers the landlord is entitled to his rent and until he is satisfied no other creditors of the tenant can interfere with what is coming from subtenants. They also claimed that, having paid the arrearages, they are subrogated to

the rights of the Fleischners and had a prior right to defendant to realize upon what is due the Company from its immediate subtenants.

At page 521 in the opinion on petition for rehearing, Mr. Justice BURNETT said:

"In brief, the defendant holds a contract debt against the company. Its obligation to the plaintiffs is likewise upon contract. The two are in the same class. There is nothing in either claim to give one preference over the other. Where the equities are equal the law will prevail. The defendant, being the more diligent in seeking to enforce his claim, has attached and there is nothing in the demand of the plaintiffs to give them priority over him or to stay his hand."

8. The right to restrain Gantenbein from applying rents from subtenants in satisfaction of his judgment, and permit defendants to apply such income to the satisfaction of the ground rents, as now contended for in the case at bar, was denied. That question is thereby foreclosed and merits no further consideration. The present suit involves much the same question as the former suit of *Bowles* v. *Gantenbein* except that perhaps since the pleadings were framed in the former case the Company has become absolutely insolvent and ceased to do business. It is believed that if the principles enunciated in the former case were fully carried out they would be determinative of the present issue.

9. About September, 1915, the sureties on the bond given for payment of rent to the Fleischners, the original lessors, paid to the Fleischners $37,500, the effect of which was to secure to themselves a release as such sureties. It fairly appears from the record that at that time the Company was not responsible for a dollar, and had it not been for the sureties

who were unfortunately liable upon the bond that transaction never would have taken place. The defendants now urge that this payment should be prorated as an indebtedness to them for the Company. The payment was not a loan to the Company. It did not benefit the Company, for it had already practically ceased to function. The sureties merely bought their releases. Equity does not demand that this should be done. As we view it the law does not authorize it.

10. It is suggested by counsel on behalf of plaintiff that the decree here should be in favor of Gantenbein for the full amount of his claim. The plaintiff, not having appealed from the decree of the trial court, is deemed satisfied with the findings and decree of that court. This is a well-settled practice in this state and really necessitates no citation of authorities. Counsel for defendant, however, cite: *Shook* v. *Colohan,* 12 Or. 239 (6 Pac. 503); *Shirley* v. *Burch,* 16 Or. 83 (18 Pac. 351, 8 Am. St. Rep. 273); *Thornton* v. *Krimbel,* 28 Or. 271 (42 Pac. 995); *Cooper* v. *Thomason,* 30 Or. 162 (45 Pac. 296); *Goldsmith* v. *Elwert,* 31 Or. 539 (50 Pac. 867); *Board of Regents* v. *Hutchinson,* 46 Or. 57 (78 Pac. 1028); *McCoy* v. *Crossfield,* 54 Or. 591 (104 Pac. 423); *Miller* v. *City of Portland,* 62 Or. 26 (123 Pac. 64).

It would not be in conformity to equitable principles to allow the defendants as directors of the Company to place themselves in an advantageous position as creditors and defeat the judgment of plaintiff, merely because of the position which they held as officers of the Company at a time when they knew that the Company could not pay all of its creditors. The decree of the Circuit Court was just and equitable.

It follows that such decree should be affirmed. It is so ordered.     AFFIRMED.     REHEARING DENIED.

McBRIDE, BROWN and McCOURT, JJ., concur.