## S. S. McCONNELL, Receiver, v. G. B. SPROUSE.

Middle Section. February 28, 1931.

Petition for Certiorari denied by Supreme Court, July 1, 1931.

292

True & Dorsey, of Springfield, for appellant, Sprouse.

R. L. Peck and Charles Willett, both of Springfield, for appellee, Receiver.

CROWNOVER, J. This was a suit by S. S. McConnell, State Superintendent of Banks and Receiver for the Peoples Bank of

Springfield, to recover of G. B. Sprouse, president and director of said bank, three notes aggregating $25,000, secured by a mortgage on a warehouse and real estate, executed by the Tennessee-Kentucky Tobacco Co.

The bill alleged that Sprouse was a stockholder, director and president of said Peoples Bank of Springfield, and that the Tennessee-Kentucky Tobacco Co. owed said bank several notes, amounting to $24,000; and, on July 12, 1924, the Tobacco Co. executed three notes of $8333.33 each, secured by a mortgage on its warehouse and real estate, to said Sprouse, which notes were for the benefit of said bank, and to be used as collateral to obtain credit at other banks for funds greatly needed to carry on said bank's business and to ward off its impending failure; but since the failure of said bank, Sprouse now refuses to turn over said notes to the receiver and claims that they were taken for his own individual benefit, and that he issued his own check upon his personal account in said bank, which the Tobacco Co. used to pay off its old, unsecured indebtedness to the bank. It was alleged that said bank was on said date insolvent and unable to honor and pay its customers' checks.

The receiver sought to recover said notes and mortgage for two reasons: (1) under an express agreement that they were taken for the bank's benefit, and (2) that Sprouse as director and president should not be permitted to exchange his deposit in an insolvent bank for securities worth their face value.

Defendant Sprouse answered and denied that he had taken said notes and mortgage for the benefit of the bank but on the contrary he had made said loan by check on his personal account and had taken the notes and mortgage for his own individual benefit, in good faith, without knowledge of the insolvency of the bank. He pleaded want of mutuality, want of consideration, failure of consideration, uncertainty of the contract both as to the parties and subject matter, ratification and estoppel and the statute of frauds.

The Chancellor found the issues in favor of the complainant and rendered a decree against the defendant Sprouse for the amount of the loan and interest, totaling $31,000, the decree to be satisfied by the surrender of the notes secured by the mortgage, in which event the receiver was ordered to reinstate on the books of the bank the sum of $25,000 as a deposit to the credit of defendant Sprouse and to pay him thereon the percent of dividends heretofore paid to other depositors.

The defendant, Sprouse, appealed and has assigned twenty errors, which are, in substance, that the Chancellor erred in finding the issues in favor of complainant and in rendering the decree because the defendant took said notes and mortgage for himself and not for the bank; that the alleged parol agreement was in contravention

of the statute of frauds, and void for uncertainty, want of consideraction and mutuality, and failure of consideration; that the Chancellor erred in holding the contract valid as to the bank and void as to Sprouse, in that, the decree held that the bank could recover on the mortgage and rescinded the contract as to Sprouse; that the Chancellor erred in granting relief on account of the insolvency of the bank because the bill did not ask relief on that theory, and such relief was repugnant to the other relief prayed; and because the allegations of the bill ratified complainant's withdrawal of the $25,000, and the receiver was therefore estopped to recover on the ground of the insolvency of the bank; and because the proof failed to show that the creditors of the bank suffered any loss by the transaction as the Tobbacco Co.'s notes to the bank were not secured and that Company was insolvent; that the bank paid 30% on the deposits and the Tobacco Co. paid only 20% on its debts; and that the Chancellor erred in admitting certain testimony.

The Peoples Bank of Springfield was a state institution and had a capital stock of $100,000. Defendant Sprouse was a wealthy man and owned a large amount of stock and had much money on deposit in said bank. He was and had been a director in the bank for more than ten years, and had been vice-president for some years. But he insists that he was not an active vice-president, received no salary and that it was merely an honorary position.

The Tennessee-Kentucky Tobacco Co. was a corporation and it seems that its principal officers were also the principal officers of said bank, and as a result of this situation it had borrowed large sums of money from the bank and in July, 1924, it owed the bank several notes aggregating $23,000 which were then held by the bank. It also owed the bank another lot of notes aggregating $15,000, which had been re-discounted to other banks, and it also had a very large overdraft. This indebtedness had been running for some time and the bank examiner had criticized the officials of the bank about this large indebtedness.

In the spring of 1924 the Peoples Bank was in a bad financial condition. Its officers had lent more than one-half a million dollars to parties who were insolvent, and the bank had become insolvent. It had been forced to re-discount its paper to other banks, but it appears that defendant Sprouse had not been apprised of these loans and of the financial condition. But on July 8, 1924, Sprouse was appealed to for help in borrowing money from other banks to the amount of $50,000 in order for the bank to transact business, and on July 12, 1924, Sprouse and H. T. Stratton, president of said bank, went to Nashville to see Vance Alexander, vice-president of the American National Bank, of Nashville, for the purpose of borrowing $50,000. Alexander told them that if they would put up good

collateral he would lend their bank $50,000 provided that Stratton would resign and that Sprouse be elected president, to which they readily agreed. They returned .to Springfield, called a meeting of the board of directors, Stratton resigned and Sprouse was elected president, and Stratton was in turn elected vice-president. Sprouse says that he would not agree to accept the presidency of the bank until after he had gone over the notes and its papers and had ascertained whether it would be a going concern. He called in the cashier and other officers of the bank and they began an examination of the bank's books and its paper on that afternoon. They worked on the books on up until the afternoon of July 15th, when several other large notes were discovered in the last lot that they examined. These notes aggregated one-half of a million dollars and were executed by insolvent parties, and it was found that the bank was hopelessly insolvent. The State Superintendent of Banks was notified that afternoon and he immediately came to Springfield, was appointed receiver and took charge of the affairs of the bank. It was found that the bank was hopelessly insolvent. It has paid only 30% on the deposits.

After Sprouse's return to Springfield from his visit to see Vance Alexander, on July 12, 1924, and after he was elected president of said bank, he lent $25,000 to the Tennessee-Kentucky Tobacco Co. by drawing his check payable to said Tobacco Co. and took the three notes secured by mortgage on the warehouse and real estate owned by said Tobacco Co. His check was deposited in the bank to the credit of the Tobacco Co. and it paid the lot of notes amounting to $23,000 then held by said bank, which notes were marked paid and turned over to the Tobacco Co., and the remaining $2000 was applied on the large overdraft of the Tobacco Co. It appears that the matter was a paper transaction, as the bank had less than $18,000 in cash at that time, and was holding many unpaid checks from other banks amounting to several thousand dollars.

It appears that another bank in Springfield had a first mortgage on the Tobacco Co.'s warehouse for $20,000 and this mortgage was a second mortgage. It also appears that the Tobacco Co. was hopelessly insolvent and was afterwards wound up and paid only 20% on its indebtedness. The Tobacco Co.'s mortgaged property was sold under the first mortgage on August 15, 1925, for $60,300, and the first mortgage was satisfied and the balance was paid over by agreement to the First National Bank of Springfield to be held subject to the determination of this law suit.

After an examination of the record and the authorities we are of the opinion that the decree of the Chancellor must be affirmed.

Whether Sprouse had knowledge of the financial condition of the bank and of its insolvency at the time he made the loan, and whether

he took the mortgage from the Tobacco Co. for the benefit of the bank, are sharply controverted questions. But after an examination of the record we are of the opinion that he did not have actual knowledge of its insolvency and that he made the loan and took the mortgage for his own benefit, but we are further of the opinion that he had sufficient knowledge of the financial condition of the bank ·to put him upon his inquiry as to its solvency and is chargeable with constructive knowledge. He had been notified that the bank must borrow $50,000 in order to carry on its business and he had been appealed to, to help borrow this money. He had gone to Nashville and interviewed Mr. Alexander who told him that Stratton had loaned out too much money and must resign' and that he must be elected president and take charge of the bank's affairs before they could borrow the $50,000. He was vice-president and director and this was sufficient to put him upon notice that the financial affairs of the bank needed his immediate attention. He had learned that the bank needed $50,000 to tide it over and that it could not operate unless he borrowed the money and accepted the position of president, and he should have pursued his investigation before he took the mortgage for his own benefit and withdrew $25,-000 of its assets. It is the duty of directors and officers of a bank to know of its financial condition and solvency and it is presumed that they had knowledge of same. Where a bank is insolvent its directors will not be permitted to appropriate its assets for their own benefit or to obtain a preference or benefit over stockholders.

> "Preferences to officers, which are prohibited, cannot be upheld on the ground that the officers had no knowledge of the condition of the company. It is generally held that the knowledge of insolvency will be imputed to officers of a corporation as a matter of law when a preference is received." 8 Fletcher Cyc. Corp., sec. 5150; 14a C. J., p. 100, sec. 1867; p. 907; sec. 3085, note 39; Wiggington v. Auburn Wagon Co., 33 Fed. (2d), 496; Gantenbein v. Bowles, 103 Ore. 277, 203 Pac. 614.

Where the corporation is insolvent or has reached such condition that its officers and directors see that they must deal with its assets in view of its probable suspension, they cannot manipulate its assets for their own benefit to the prejudice of the general creditors. 14a C. J., 901-5, sec. 3080; Smith v. Bradt Printing Co., 97 Tenn., 351, 37 S. W., 10; Tradesman Publishing Co. v. Knoxville Car Wheel Co., 95 Tenn., 634, 32 S. W., 1097; Asheville Trust Co. v. Hyde, 172 Fed., 730.

A director or other officer of a corporation may not either directly or indirectly derive personal profit or benefit out of transactions connected with the corporation that is not enjoyed in common by all the stockholders, and will be required to account to the corpo-

ration for any profits or advantages derived therefrom in disregard of his fiduciary relation. It is immaterial that the corporation was not damaged by the transaction in which the profits were made, or that he acted in good faith. 14a C. J., 123, sec. 1891.

Directors are trustees for the company and the stockholders. Shea v. Railroad, 6 Baxt., 277; Allen Foster Willett Co., Petitioners, 227 Mass., 551.

"It was the duty of the directors of the bank to know of its insolvency, and it is presumed that they had knowledge of the same." Clark, Sparks & Sons, etc., Co. v. American Natl. Bank, 230 Fed., 738; Martin v. Webb, 110 U. S., 7, 28 L. Ed., 49; Manhattan Bank v. Walker, 130 U. S., 627, 32 L. Ed., 959; Tate v. Bates, 118 N. C., 287, 24 S. E., 482, 54 Amer. State Rep., 719.

Of course where a corporation has two officers of equal power and authority, notice to one is constructive notice to the other, and, therefore, notice to the corporation. Whatever knowledge a director or other officer has or ought to have officially, he has or will be conclusively presumed to have as a private individual, and the better rule seems to be that the knowledge of a corporation derived by virtue of the relationship between itself and an officer or agent thereof is not imputed to another officer or agent as an individual. 4 Fletcher Cyc. Corp., secs. 2256-7-8; Lane v. Bank, 9 Heisk., 437; Wallace v. Lincoln Savings Bank, 89 Tenn., 659, 15 S. W., 448; Cory Mann George Corp. v. Old, 23 Fed. (2d), 803. But these propositions do not in any way affect the presumption that they had knowledge of its financial condition and that they must account for preference received to the prejudice of the general creditors and other stockholders, as hereinabove set out.

The New Memphis Gas Light cases, 105 Tenn., 268, 285-9, 60 S. W., 206, 80 Am. St. Rep., 880, holding that directors may deal with the corporation and are permitted to take a mortgage or collateral security to secure themselves against possible loss as accommodation endorsers, where the corporation is a going concern expecting to continue in business, do not apply to this case, as the corporation in those cases was solvent.

"So long as a corporation is solvent, it may borrow money from or otherwise contract with an officer or director, and may pay him, or mortgage or pledge property to secure him, just as it may pay or secure any other creditor, and, if it afterwards becomes insolvent, the conveyance, mortgage, or pledge will be valid as against other creditors, although the result may be to leave them unpaid. In other words, if there is an indebtedness owing a corporation officer from the corporation, and the corporation is solvent, there is no question but that the corporation may give its officer security for the debt, such as a note,

mortgage, pledge of corporate bonds or the like, and thereby prefer such officer as a creditor.'' 4 Fletcher Cyc. Corp., sec. 2326.

But it is otherwise where the corporation was insolvent at the time the transaction and preference was obtained, as hereinabove shown.

The bill is not repugnant. The rule against repugnancy does not prevent complainant from filing his bill or so amending it as to present his case in a double aspect. 21 C. J., 407; Gibson's Suits in Chancery, 149 (sub. 2). Repugancy must be raised by demurrer. If defendant does not demur he waives the defense. 18 Ency. Plead. & Pract., 743; Gibson's Suits in Chancery, sec. 285. However it is argued that the paragraph of the bill alleging insolvency of the bank and that the directors may not obtain a preference is a mere conclusion of law rather than an affirmation of a fact, and that this question was settled in the New Memphis Gas Light Co. cases, 105 Tenn., 292. By an examination of this case, it will be seen that the paragraph in the bill distinctly alleges insolvency, etc., as follows: ''And further, the said Peoples Bank on said date, to-wit, July 12, 1924, being insolvent and unable to honor and pay its customers' checks, defendant, G. B. Sprouse, as president (and director by amendment to the bill), of said bank will not be allowed to exchange his own deposit in said insolvent bank for securities worth their face value, such as its three notes secured in said deed of trust, Exhibit 'A,' but will, on the other hand, be required by the Honorable Court to, in good faith, carry out his aforesaid agreement and deliver said notes and trust deed to the complainant to be used and handled by him in the administration of said trust.''

The questions of uncertainty, want of mutuality, want of consideration, failure of consideration, ratification, estoppel, and the statute of frauds are immaterial and the assignments must be overruled.

Most of the assignments of errors as to the admission of testimony should be overruled for the reason that the testimony was relevant and admissible, and the assignments on the admission of testimony raise immaterial questions, as the case was tried by the Chancellor without a jury, and on appeal the trial is de novo, we are not bound by the Chancellor's finding of fact.

It results that the assignments of errors must be overruled and the decree of the Chancellor must be affirmed. A decree will be entered in this court for $31,000 and interest from July 22, 1930, to the present, in favor of the receiver and against appellant and the sureties on his appeal bond, which may be satisfied by the delivery of the three notes and the mortgage to the receiver as decreed by the Chancellor within thirty days from the entry of this decree. The cost of the cause including the cost of the appeal is decreed against

the appellant and the surety on his appeal bond. This decree is declared a lien upon the proceeds of the sale of the Tobacco Co.'s warehouse now in the hands of the First National Bank of Springfield, and the cause is remanded to the Chancery Court of Robertson County for further proceedings in the case and the collection of the fund.

## OPINION ON PETITION FOR A REHEARING.

This cause is again before us on petition to rehear, in which it is insisted that the court overlooked the fact that the bill was filed in only one aspect and was to recover the specific notes and mortgage. It is insisted that as the bill was filed for that one purpose this court erred in holding that Sprouse must account for the benefits that he derived after the bank became insolvent, as he was an officer of the bank. There is nothing new in this petition, and we think that our original opinion sufficiently answers each proposition raised. We think that it was sufficiently alleged in the bill that the bank was insolvent, that Sprouse was vice-president and director and had sufficient notice to put him upon his inquiry as to the solvency before he derived the benefit, and that the Receiver is entitled to the relief we have granted under his prayer for general relief. It results that the petition must be denied.

DeWitt, J., Higgins, Sp. J., concur.