# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

GROVER R. BASS,                    )
                                   )
      Plaintiff/Appellee,          ) **Shelby Chancery No. 94827-2 R.D.**
                                   )
VS.                                ) **Appeal No. 02A01-9508-CH-00178**
                                   )
JOHN C. KIMBROUGH,                 )
                                   )
      Defendant/Appellant          )


APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE FLOYD PEETE, JR., CHANCELLOR

FILED

October 3, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

**ROGER A. STONE**
**STONE, HIGGS, and DREXLER**
Memphis, Tennessee
Attorney for Appellant


**WILLIAM A. COHN**
**THE COHN LAW FIRM**
Cordova, Tennessee
Attorney for Appellee


**AFFIRMED**


**ALAN E. HIGHERS, J.**


**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

This case concerns liability in connection with the default on a promissory note for the purchase of stock in a closely held corporation. After a bench trial, the trial court awarded a judgment in favor of the plaintiff and also awarded attorneys' fees to plaintiff. Two principal issues are before the Court. The first is whether the plaintiff gave the necessary parties proper notice of default under the terms of the promissory notes executed by the parties. The second is whether the guarantor of the promissory notes is liable under the personal guaranty if proper notice was, in fact, given. We find that the trial court was correct in its holding that proper notice was given and that the personal guarantor was liable. Accordingly, we affirm the trial court's conclusion.

**ISSUES**

The issues on appeal are as follows:

    I.     Are the contracts in default?
         A.   Was contractual notice given?
         B.   If the notice requirements of an unambiguous contract have not been met, is the Chancellor empowered to reform the contract?
    II.    Is John Kimbrough liable under the personal guaranty?
         A.   Is Kimbrough liable under the personal guaranty if the underlying contracts are not in default?
         B.   Is Kimbrough liable under the personal guaranty if there was no consideration for the guaranty?
    III.   If John Kimbrough is liable under the personal guaranty, is he entitled to cure, and therefore liable only for payments due through October 1, 1987?
    IV.   Is John Kimbrough entitled to attorneys' fees upon reversal?

**FACTS**

Grover R. Bass was a stockholder in Newark, Inc., an Arkansas corporation. On October 10, 1984, Grover R. Bass (hereinafter, "Bass") and Newark, Inc. (hereinafter, "Newark") entered into a Stock Redemption Agreement in order for Newark to purchase Bass' shares of stock in Newark. The agreement was signed by Bass and by John Kimbrough (hereinafter, "Kimbrough"), as president of Newark. The Stock Redemption Agreement provided that at closing, Bass would deliver his shares of stock to the law firm

2

of Kimbrough & Norfleet, P.C., as Escrow Agent. John Kimbrough was a principal in the Memphis law firm of Kimbrough & Norfleet.

Payment of the purchase price of Bass' shares of stock was secured by two promissory notes executed on or about October 10, 1984. A "Monthly Installment Amortized Note" was executed by Newark through its president, John C. Kimbrough, and it provided that Bass would be paid the principal sum of $132,033.00 plus interest for the purchase of the stock. An "Annual Installment Note" was executed by Newark through its president, John C. Kimbrough, and it provided that Bass would be paid the principal sum of $33,952.00 plus interest for the purchase of the stock. Both notes specified the procedure to be followed in case of default. The procedure in case of default stated:

> Undersigned shall not be deemed in default unless the holder shall first give to the undersigned written notice by certified mail of such default, at the undersigned's current address, and the undersigned then fails to cure such default with thirty (30) days from receipt of such notice.

Both promissory notes also declared:

> This note is subject to all the terms and provisions of that certain Stock Redemption Agreement by and between payee and the undersigned dated May 1, 1984.

In the case of default, the Stock Redemption Agreement provided:

> If Corporation should default in the payment of the balance owed Stockholder, Stockholder shall notify Escrow Agent, who shall in turn notify Corporation within 30 days of receipt of said notice from Stockholder. If Escrow Agent is not notified within 30 days from the date it notified Corporation that said default has been cured, waived or is nonexistent, then Escrow Agent shall sell the stock or other collateral being held by it to the highest bidder in accordance with the provisions of the Uniform Commercial Code, and shall pay to Stockholder the funds received, less any expense of said sale.

In addition to executing the two promissory notes, John Kimbrough executed on October 10, 1984, a personal guaranty to secure payment of the Monthly Installment Amortized Note and the Annual Installment Note. By its terms, Kimbrough's personal guaranty was to expire on October 1, 1987.

3

Newark failed to make all the required installment payments for purchase of Bass' stock. By letter dated April 24, 1987, William Cohn, Bass' attorney, wrote a letter to John Kimbrough requesting full payment of the contract indebtedness. On July 1, 1987, Cohn wrote a letter to Kimbrough, June Merrell and Newark, Inc., at their respective addresses, notifying the parties of the delinquency in payment and declaring that all amounts had been accelerated and were due and payable. When payment was not received after 30 days, Bass filed a complaint on August 18, 1987, in the Chancery Court of Shelby County, Tennessee, against Newark, Inc., John C. Kimbrough and the Estate of Virgil C. Merrell, June E. Merrell, Administratrix/Executrix. In the Complaint, Bass prayed for over $192,000.00 in damages plus interest, attorneys' fees and costs. The cause was tried on May 21, 1992.

After post-trial briefs had been submitted, the trial court entered its "Order of Findings of Court and Post Trial Procedure" on February 17, 1993, and later entered its "Order Awarding Attorney Fees and Final Judgment" on August 13, 1993. The trial court found that the parties had engaged in a single transaction which included the signing of promissory notes and a personal guaranty to secure the promissory notes and that said transaction occurred on October 10, 1984. The trial court found that not only was there a default in the payments but also that John Kimbrough had notice of the default and was knowledgeable of the procedures to be taken after receipt of the notice of default. Finally, the trial court found that John Kimbrough had executed a personal guaranty securing payment of the promissory notes to Grover Bass which was for a period expiring on October 1, 1987. Since Kimbrough received notice of default prior to October 1, 1987, Kimbrough was personally liable to Bass on the guaranty. The trial court found Kimbrough liable under the guaranty and subsequently entered a judgment in favor of Grover Bass in the amount of $262,754.60 plus interest and $39,413.19 in attorneys' fees, for a total judgment of $302,167.79 plus costs. The trial court's subsequent order entered July 19, 1994, dismissed the lawsuit as to defendants Newark, Inc., and the Estate of Virgil C. Merrell, June E. Merrell, Administratrix/Executrix. The final judgment was subsequently withdrawn by the trial court pursuant to Rule 60.02 T.R.C.P. in its "Order Granting Relief

4

from Judgment" entered January 4, 1995, and reentered as of that date. Kimbrough timely filed a notice of appeal on January 26, 1995, and the cause is properly before this Court for consideration.

This is a contract action held without the intervention of a jury. T.R.A.P. 13(d) requires this Court to review the findings of fact by the trial court de novo upon the record, accompanied by a presumption of the correctness of the findings. Unless the preponderance of the evidence is otherwise, we must affirm the trial court absent error of law. On appeal, this Court has been presented with the transcript of the evidence, the technical record, exhibits, the trial court's findings of fact as well as the orders entered in the cause.

## DEFAULT

The promissory notes executed by Newark for Bass require that notice of delinquency in payment be given by Bass to Newark in order for the notes to be in default. Specifically both the Monthly Installment Amortized Note and the Annual Installment Note provide:

> Undersigned (Newark) shall not be deemed in default unless the holder (Bass) shall first give to the undersigned written notice by certified mail of such default, at the undersigned's current address, and the undersigned then fails to cure such default within thirty (30) days from receipt of such notice. (Emphasis Added).

The notes themselves incorporate the Stock Redemption Agreement entered between Bass and Newark which provided:

> If Corporation should default in the payment of the balance owed Stockholder, Stockholder shall notify Escrow Agent, who shall in turn notify Corporation within 30 days of receipt of said notice from Stockholder. If Escrow Agent is not notified within 30 days from the date it notified Corporation that said default has been cured, waived or is nonexistent, then Escrow Agent shall sell the stock or other collateral being held by it to the highest bidder in accordance with the provisions of the Uniform Commercial Code, and shall pay to Stockholder the funds received, less any expense of said sale.

The Stock Redemption Agreement expressly incorporated by reference the Escrow Agreement between Newark and Kimbrough & Norfleet, P.C. The Escrow Agreement

specified that stock would be held by Kimbrough & Norfleet as collateral and that to cause the collateral to be sold, a stockholder such as Bass would have to give notice to Kimbrough & Norfleet. In particular, the Escrow Agreement expressly stated:

> 3. DEFAULT - Upon notification by a stockholder of default in the payment of the redemption price due such Stockholder, Escrow Agent shall notify Corporation within 30 days of receipt of such notice of default.
>
> If Escrow Agent is not notified that the default has been cured, waived or is nonexistent within 30 days of its notice to Corporation, then Escrow Agent shall sell the stock or other collateral of that particular Stockholder to the highest bidder under the provisions of the Uniform Commercial Code then in effect.
>
> Any proceeds received from such sale shall be paid to the Stockholder, less any expenses of the sale incurred by Escrow Agent.

John Kimbrough asserts that for the notes to be in default, Bass must have given notice by certified mail to Newark at its Forrest City, Arkansas, address. If the delinquency were not cured and if Bass wished to liquidate the stock, he had to give notice to Kimbrough & Norfleet, as Escrow Agent. The Escrow Agent, in turn, was then obligated to give notice to Newark, Kimbrough and the others listed in the Escrow Agreement, and then allow them an opportunity to cure before selling the stock.

On April 24, 1987, Bass' attorney, William Cohn, sent a letter to John Kimbrough notifying him that Newark's payments on the promissory notes were delinquent and demanding full payment. The letter was sent to Kimbrough at the offices of Kimbrough Properties, Inc. By certified letter dated July 1, 1987, Cohn notified John Kimbrough and Newark that the payment of the notes was delinquent and demanded full payment. The letter was again sent to Kimbrough at the offices of Kimbrough Properties in Memphis and also to Newark at its Forrest City, Arkansas, address. While it does not appear that the address of Kimbrough Properties was listed in the promissory notes, Stock Redemption Agreement or Escrow Agreement, the record reveals that John Kimbrough, by letter dated January 30, 1987, and written on Kimbrough Properties stationery, had notified Bass that Newark was experiencing cash flow problems. In that letter, Kimbrough made proposals

6

to Bass regarding payment for the stock. Under these circumstances, the Court concludes that Cohn's sending the letter to Kimbrough at the offices of Kimbrough Properties was reasonable. See generally Blazer Ins. Ag., Inc. v. Jim Cogdill Dodge Co., 809 S.W.2d 745 (Tenn. App. 1991). Further, Kimbrough does not deny that he received notice of the delinquency. At trial he testified:

> THE COURT: You don't deny getting that notice, though, do you? You got actual notice?

> THE WITNESS: I got actual notice; I do not I deny that, Your Honor.

Kimbrough asserts on appeal that Bass failed to notify Newark of the delinquency of payment on the notes. The Court finds Kimbrough's position to be without merit. On its face, the July 1, 1987, letter indicates that it was sent via certified mail to Newark at the Forrest City address contained in the Escrow Agreement. The July 1, 1987, letter referred to the Monthly Installment Amortized Note and to the Annual Installment Note. Furthermore, Kimbrough was president of Newark, and Kimbrough admitted to the trial court that he received notice of the delinquency. Therefore if Kimbrough received notice, Newark also received notice. Notice to a corporate officer constitutes notice to the corporation. McConnell v. Sprouse, 13 Tenn. App. 291, 297 (Tenn. App. 1931); Holt v. Southern Ry Co., 51 F.R.D. 296, 299 (E.D. Tenn. 1969); See also Hurst Boillin v. Jones, 279 S.W. 392, 393 (Tenn. 1926); Williams v. Title Guaranty & Trust Co., 212 S.W.2d 897, 901 (Tenn. App. 1948)(It is a general rule of law that a principal is bound by the knowledge of or notice to his agent, received while the agent is acting within the scope of his authority and which is in reference to a matter over which his authority extends). In this regard, we affirm the trial court's finding that Newark did receive notice of the delinquency of payment on the promissory notes.

Both promissory notes provided that once Newark received notice of the delinquency, it had 30 days in which to cure the delinquency. Failure to cure the delinquency within 30 days would render the notes to be in default. It is not disputed that Newark failed to cure the delinquency. Therefore, by their own terms, the promissory

7

notes were in default, and Bass could demand payment in full of the remaining balance due on the notes plus interest and attorneys' fees. Kimbrough maintains that upon default, Bass had an obligation under the Stock Redemption Agreement to notify Kimbrough & Norfleet, as Escrow Agent, which would in turn notify Newark of the default. If payment from Newark were not forthcoming within an additional 30 days, the Escrow Agent could then sell the stock being held as collateral and pay Bass the proceeds. Kimbrough maintains that through the agreements of the parties, an elaborate scheme had been created that Bass was bound to follow or be precluded from recovery. Kimbrough would have the Court believe that Bass was bound to follow the following scenario: Upon learning of delinquency on the promissory notes, Bass should have notified Newark, of which John Kimbrough served as president. Upon receiving notice, Newark would have had 30 days in which to cure or be found in default. If Newark defaulted on the promissory notes, Bass then was obligated to notify the Escrow Agent, Kimbrough & Norfleet, a law firm in which John Kimbrough was a principal. Upon receipt from Bass of notice of Newark's default, Kimbrough & Norfleet would notify Newark, a corporation for which its own principal John Kimbrough served as president, regarding the default. Once the Escrow Agent notified Newark, it was obligated to wait another 30 days for Newark to cure the default. Only after 60 days had passed since Bass first had notified Newark of the delinquency could the stock be sold to satisfy the default.

The Court is urged to believe that a system had been created in which the left hand would not know what the right hand was doing, in spite of the fact that both hands were attached to one and the same body, namely that of John Kimbrough. Such a position is untenable and is expressly rejected by this Court.

It appears to the Court that Bass, through his attorney's letter of July 1, 1987, properly notified John Kimbrough, individually, at his Memphis address and Newark, Inc., of which John Kimbrough served as president, at its Forrest City, Arkansas, address. It is undisputed that Newark failed to cure the delinquency and defaulted on the promissory notes. The Court finds that as of that time, John Kimbrough had notice of delinquency and

8

default in his three capacities: individually, as president of Newark, and as a principal in the law firm of Kimbrough & Norfleet, the Escrow Agent. Since Kimbrough had notice, Newark had notice of the delinquency in payment. Accordingly, the Court declines to find that the Chancellor reformed the contract. Instead, it is apparent that Bass satisfied all contractual prerequisites to declaring the notes to be in default and was entitled at that time to maintain a suit to collect upon the promissory notes and to enforce the personal guaranties executed by Kimbrough.

## PERSONAL GUARANTY

On October 10, 1984, Kimbrough executed a "Personal Guaranty" in which he agreed personally to secure payment of the Monthly Installment Amortized Note and the Annual Installment Note that Newark owed to Bass. There is no dispute among the parties that the personal guaranty was executed on October 10, 1984, and would expire on October 1, 1987. Both Bass and Kimbrough stated at trial that the personal guaranty was executed on October 10, 1984.

The dispute among the parties concerns the date the promissory notes were executed. Kimbrough asserts that both promissory notes were executed on October 1, 1984. Therefore, since the personal guaranty subsequently was executed on October 10, 1984, there was no separate consideration for the guaranty, and it is not binding as a separate contract. Bass maintains that both promissory notes and the personal guaranty were executed on the same date, October 10, 1984.

The trial court found that the promissory notes and personal guaranty were part of one and the same transaction. Therefore, the trial court found that Bass was entitled to enforce Kimbrough's personal guaranty. We agree with the trial court's conclusion in this regard.

Bass testified at trial that he would not have entered into the sales contract without the personal guaranty.

9

A: He (Kimbrough) sent me by mail a buy-and-sell agreement, and I think he sent copies of the notes as well; I'm not sure about that. And I called him and I said, "I'd be willing to sell, but only if I have your personal guaranties."

Q:... You said you would only sell if you had his personal guaranty; is that correct?

A: That's correct.

Kimbrough admitted that it was his intent to give Bass a personal guaranty as part of the deal to sell Bass' shares of stock. At trial, Kimbrough stated:

THE COURT: Let me ask you this. Did you intend to give him a personal guaranty at that -- when you signed this document, what was your intent at the point you signed this document?

THE WITNESS: I intended to give him one.

The personal guaranty was executed on October 10, 1984. Kimbrough asserts that the promissory notes were previously executed on October 1, 1984, which is the date stated on the face of the instruments. However, both promissory notes specifically refer to the Stock Redemption Agreement. The notes state in pertinent part:

This note is subject to all the terms and provisions of that certain Stock Redemption Agreement by and between payee and the undersigned dated May 1, 1984.

The Stock Redemption Agreement states that it was executed on May 1, 1984; however, the notary certificate on said agreement states that it was executed on October 10, 1984. The acts of a notary public are presumed correct and must be relied upon with confidence. See generally Figuers v. Fly, 193 S.W. 117 (Tenn. 1917). Since both the personal guaranty and the Stock Redemption Agreement were executed on October 10, 1984, this is strong evidence that the promissory notes were also executed on said date. As Bass testified at trial:

A: ... I said, "Fine. I'll come on down and we'll sign the documents and you give me the guaranty."

Q: When was this, do you remember?

A: Oh, this was several days after he had sent these documents to me by mail. I went down to this office. The documents had been previously dated and so on. I went down to his office -- and the dates on the documents were not changed, but they were signed in his office -- the guaranty was given to me in his office. Where notarizations were required of

10

> Mr. Kimbrough's signature and my signature, a young lady in his office notarized our signatures -- all on the same date.

Similarly, on cross-examination, Bass stated:

> Q: At the time -- at the closing of this deal as -- to paraphrase your lawyer, are you stating that simultaneously with that Mr. Kimbrough gave you his personal guaranty?
>
> A: Yes, it all took place in his office at the same time.
>
> .....
>
> Q: You're telling this Court, Mr. Bass, that you-all met one time and that the note was signed by Mr. Kimbrough and at the same time he gave you a personal guaranty. Is that what you're telling this Court?
>
> A: That's exactly what happened.

The Court finds that the personal guaranty, promissory notes and Stock Redemption Agreement were all part of one and the same transaction that occurred on October 10, 1984. There is evidence that none of the other shareholders received personal guarantees in connection with the purchase of their stock in Newark. However, it is undisputed that Bass requested and obtained Kimbrough's personal guaranty to secure payment of the promissory notes, and Bass is entitled to the benefit of his bargain. Personal guaranties are construed against the guarantor as strongly as the language of the guaranty will permit. Memphis Sheraton Corp. v. Kirkley, 640 F.2d. 14, 17 (6th Cir. 1981); Farmers-Peoples Bank v. Clemmer, 519 S.W.2d 801, 805 (Tenn. 1975)(A guarantor shall be held to the full extent of his engagements and the rule in construing such an instrument is that the words of the guaranty are to be taken as strongly against the guarantor as sense will admit).

Kimbrough asserts that even if he is liable under the personal guaranty, he should not be liable for payments due after October 1, 1987, the expiration date of the personal guaranty. Both promissory notes contained an acceleration clause which provided in relevant part:

> Upon default in any payment, or part thereof, the remaining amount of the principal of this note with all interest then accrued shall, at the option of the holder of this note, at once become due and payable.

As previously discussed, default did, in fact, occur, and it occurred before October 1, 1987.

Once default on the promissory notes occurred, the remaining balance was accelerated and became due and payable according to the terms contained in the notes. The personal guaranty provided as follows:

> The undersigned agree to personally guarantee the following notes, copies of which are attached, for the limited period stated:...

When a guaranty is limited as to the time during which it will be binding on the promisor, construction of the guaranty will depend on the intention of the parties as that intention is determined from the language of the instrument and the facts surrounding its execution. Bank of Waynesboro v. Ghosh, 576 S.W.2d 759, 761 (Tenn. 1979). The Court finds the guaranty in this cause to be clear and unambiguous. Had Kimbrough desired to limit his exposure on the guaranty to a single transaction, to a certain number of transactions or even to a specific dollar amount, he could have done so by express language in the guaranty. Stearns v. Jones, 199 S.W. 400, 401 (Tenn. 1917).

Kimbrough's personal guaranty was intended to protect Bass in case Newark defaulted on payment of the notes. Newark failed to make the necessary installment payments, and the notes were in default prior to October 1, 1987. By the express terms contained in the promissory notes, upon default, Bass had the option of accelerating repayment and declaring the unpaid principal and interest due and payable. Therefore, the Court concludes that Kimbrough is liable not only for the installments due through October 1, 1987, but also for the entire principal amount plus interest.

## ATTORNEYS' FEES

The final issue to be addressed is that of attorneys' fees. The promissory notes each provided:

> If this note is placed in the hands of an attorney for collection, by suit or otherwise, or to protect the security for its payment or to enforce its collection, the undersigned will pay all costs of collection and litigation, together with a reasonable attorney's fee, should the holder prevail in such action.

The Court finds that Bass is the prevailing party in his efforts to enforce the payments on the promissory notes. Therefore, he is entitled to recover from Kimbrough the costs of

12

litigation together with reasonable attorneys' fees pursuant to the express terms of the promissory notes.   Therefore, the judgment of the trial court is affirmed. Costs are adjudged against Kimbrough.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
LILLARD, J.

13