Argued and submitted October 26, 1990, affirmed on appeal and on cross-appeal
February 26, reconsideration denied April 15, petition for review denied
June 23, 1992 (313 Or 354)

## HOUSTON'S, INCORPORATED,
*Respondent - Cross-Appellant,*

*v.*

## Lawrence B. HILL,
Harriet Rogers, Northwest Hotel Supply Co.,
R & H Co. and Northwest Hotel Supply Co., Inc.,
*Appellants - Cross-Respondents,*

*and*

## NORTHWEST RESTAURANT SUPPLY CO.
and N.W.R.S. Restaurant Supply, Inc.,
*Defendants.*

(A8807-03622; CA A62005)

826 P2d 644

Michael J. Morris, Portland, argued the cause for appellants - cross-respondents. With him on the briefs was Bennett and Durham, Portland.

William D. Bailey, Portland, argued the cause for respondent - cross-appellant. With him on the briefs was Zarosinski, Hill & Bailey, Portland.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff brought this action to recover a debt owed by Northwest Restaurant Supply Co. (Restaurant), a wholly-owned subsidiary of Northwest Hotel Supply Co., Inc. (Hotel), and to hold the other defendants liable for that debt.[1]

Defendants Hill and Rogers were the sole shareholders of Hotel, a Portland business supplying equipment to hotel and restaurant kitchens. In 1975, Hotel bought a restaurant supply business in Seattle, creating a wholly-owned subsidiary, Restaurant, with $15,000 capital, to operate the business. Hotel sold inventory to Restaurant on open account and paid its bills. Although every sale was invoiced, Restaurant's bookkeeper kept a ledger that reflected that no amount was owing to Hotel.

In 1981, Restaurant began bidding on contracts, and its sales expanded. However, it underbid some large jobs and suffered serious losses, the extent of which did not become clear until 1984. During that period, Hill disputed a bill from a subcontractor, which then obtained a default judgment against Restaurant for $59,000, and Restaurant's attorney warned Hill that the judgment creditor could execute on the judgment, thereby disrupting Restaurant's business. In response, in February, 1985, Restaurant executed a promissory note to Hotel that was secured by its interest in inventory, office supplies, equipment and accounts receivable and by a trust deed on a condominium that it owned. The note did not bear interest, and no interest has ever been charged or paid. Hill admitted that those actions were taken to put Restaurant's assets beyond the reach of the judgment creditor and also admitted that Restaurant owed Hotel in excess of $750,000 when the debt was secured.

---

[1] Plaintiff named 7 defendants: Lawrence Hill; Harriet Rogers; Northwest Hotel Supply Co.; R & H Co.; Northwest Hotel Supply Co., Inc.; Northwest Restaurant Supply Co.; and N.W.R.S. Restaurant Supply, Inc. Judgment was entered against all of them. All defendants except Northwest Restaurant Supply Co. and N.W.R.S. Restaurant Supply, Inc., appeal. Defendant Northwest Hotel Supply Co., *Inc.*, changed its name to R & H Co. We are not told whether defendant Northwest Hotel Supply Co. (no Inc.) is a separate entity or why it is named as a defendant or appellant. Northwest Restaurant Supply Co. changed its name to N.W.R.S. Restaurant Supply, Inc. We refer to the parties by their original names, Northwest Hotel Supply Co., Inc., and Northwest Restaurant Supply Co.

In the fall of 1985, Hotel adopted a one-year plan for the liquidation of Restaurant. It provided:

"All assets, subject to all the liabilities of [Restaurant] (including income taxes for [Restaurant's] final taxable year), shall be distributed to [Hotel] in exchange for and in cancellation of the 15,000 shares of common stock of [Restaurant]."

After the distribution, Hotel received $28,396 from the sale of the condominium, $49,857.18 from accounts receivable, of which $29,000 went directly to Hill and Rogers, $29,000 from the auction of inventory and $22,498 from the sale of inventory to two employees who had taken over the business. Hotel then placed some or all those proceeds in a bank account (characterized as a liquidating trust) from which creditors were to be paid. It is unclear, however, what amounts were deposited into or paid out of that account. Hotel was involuntarily dissolved in April, 1986, for nonpayment of the annual fee. Its assets were sold, and Hill and Rogers each received $170,000 of the proceeds.

Plaintiff sought to recover from Restaurant amounts due on open account and from Hotel on either a third-party beneficiary theory premised on an alleged agreement that Hotel would pay Restaurant's liabilities or that Hotel was liable for the debt, because the assets that it received from Restaurant constituted capital paid in cancellation of Restaurant's stock. It alleged that Hill and Rogers were liable, because the assets of Hotel were distributed to them when Hotel was dissolved. Defendants stipulated that Restaurant owed plaintiff the amount claimed but denied that the obligation on the open account included payment of a service charge of 1-1/2% per month and attorney fees. The court denied plaintiff's motion for a directed verdict on the breach of contract claim against Restaurant and attorney fees but directed a verdict for defendants on the third-party beneficiary claim. The sole issue submitted to the jury was whether Restaurant had agreed to pay service charges. It is not explained why the question of attorney fees was not submitted. In any event, the jury found that there was no such agreement and returned a verdict for defendants.

Plaintiff's equitable claims were tried to the court. They were that, in the dissolution of Restaurant, its assets

had been wrongfully transferred to Hotel without first satis-
fying Restaurant's obligation to plaintiff and that, in the
dissolution of Hotel, its assets had been wrongfully distrib-
uted to its shareholders, Hill and Rogers, without paying
plaintiff. The trial court disregarded the corporate entities,
characterizing the transfers from Restaurant to Hotel as
fraudulent, set them aside and awarded plaintiff $25,849.50.
Appellants appeal that judgment. Plaintiff cross-appeals,
assigning error to the court's failure to award attorney fees.
We review *de novo* and affirm.

Defendants contend that the trial court erred by
disregarding the corporate entities, holding the parent liable
for the subsidiary's debts and characterizing the transfers as
fraudulent, because those theories had not been sufficiently
pled. Although it appears that defendants are technically
correct, on *de novo* review, we hold that the court reached the
correct result. *State Farm v. Sevier*, 272 Or 278, 298-99, 537
P2d 88 (1975).

■■ The dispositive issue was framed in plaintiff's trial
memorandum and reiterated by defendants at trial:

"Is the claimed advancement of inventory and money by the
parent to the subsidiary in the amount of $750,000 to be
characterized as a loan, and if so, may it properly be paid back
to the parent in preference over other creditors or is the
advancement to be characterized as a contribution to capital
which may not be returned to the parent by the insolvent
subsidiary until after all creditors have been paid in full?"

Defendants argue that the monies advanced to Restaurant
for start-up expenses and, later, as sales on open account were
intended as loans and that, as the debtor, Restaurant could
prefer one creditor over another. The substance and effect of
the transaction, however, not the parties' label for it, deter-
mines the nature of the transaction. A shareholder loan is
deemed a capital contribution if it is made to an initially
undercapitalized corporation, *Stumbo v. Hult Lumber Co.*,
251 Or 20, 444 P2d 564 (1968), or, as is the case here, when no
other disinterested lender would have extended credit. *Taylor
v. Standard Gas & Electric Company*, 306 US 307, 59 S Ct
543, 83 L Ed 2d 669 (1939); *In re N & D Properties, Inc.*, 799
F2d 726, 733 (11th Cir 1986). The accountant for both

corporations admitted that defendants failed the second part of this test:

"Q: * * * If these companies were unrelated, dealing at arms length, do you think it would be a prudent business practice to make the kind of cash advancements and inventory advancements and loans that your records reflect were made by the parent to this subsidiary?

"A: No."

Further, defendants expected repayment only if the venture became a successful operation.[2] *See Pepper v. Litton*, 308 US 295, 306, 60 S Ct 238, 84 L Ed 281 (1939).

Additional factors support the conclusion that the advances were capital contributions: They were made by the sole shareholders; no notes or security interests were taken when the advances were made; no interest was charged on the note that was taken; two sets of books were prepared for accounts payable, one of which did not include the debt owed to Hotel; and when Restaurant was dissolved, directors of both companies passed a joint resolution transferring all of Restaurant's assets to Hotel in cancellation of its stock, rather than in repayment of loans. Only if the advancements had been considered capital contributions would the subsidiary's assets have been transferred to Hotel in cancellation of stock.

Because defendants are shareholders, their transactions with the corporation are subject to strict scrutiny and,

---

[2] Hill testified:

"Q: And with * * * [Restaurant] * * * with that kind of profit record, are you—are you telling us that you expected to be paid back anyway?

"A: We did, yes.

"Q: But only if * * * [Restaurant] * * * made a profit, right?

"A: That's right.

"Q: Okay. You knew there was no way you could get paid back unless * * * [Restaurant] * * * turned around and became successful, didn't you?

"A: Hey, when you're in business, it's a gamble, it's—you put your money out there to see what you can make.

"* * * * *

"Q: And so you put this $750,000 up there, or had * * * [Hotel] * * * put the $750,000 up there in this American spirit in the hopes of creating something successful, isn't that what you did?

"A: That's what we did."

unless they sustain their burden to show that those transactions were part of an arms-length bargain, equity will set them aside. *Pepper v. Litton, supra*, 308 US at 306-07. Defendants have failed to meet that burden. They argue that at least some of Hotel's advances were loans, but they have failed to establish which transactions were legitimate loans or to identify what payments were made on the debt. Accordingly, we hold that the advances were capital contributions and that plaintiff has a right to satisfy its claim out of those assets wrongfully distributed to Hotel and then to Hill and Rogers.

■       The third-party beneficiary claim was tried to a jury. On cross-appeal, plaintiff contends that the trial court erred in directing a verdict for defendant on that claim. Assuming that there was evidence to submit that claim to the jury, the jury might have awarded plaintiff all amounts due from Restaurant on the open account, including service charges and attorney fees, if Restaurant was liable for them. However, the contract claim against Restaurant was submitted to the jury, which specifically found that there was no agreement to pay service charges.

Although the issue of attorney fees was part of plaintiff's contract claim against Restaurant, it was not submitted to the jury. Plaintiff did not ask the court to instruct the jury on that issue. Because the jury found against plaintiff on its agreement with Restaurant, if there was error in dismissing plaintiff's third-party beneficiary claim, it was harmless.

Affirmed on appeal and on cross-appeal.