RAPID DISPLAYS INC.,
Plaintiff–Appellant,

v.

Ray L. GORDER, individually; et al., Defendants–Appellees.

Rapid Displays Inc., Plaintiff–Appellee,

v.

Ray L. Gorder, individually,
Defendant–Appellant,

and

Pamela Kay Gorder, individually; et al., Defendants.

Nos. 04–35246, 04–35283.
D.C. No. CV–02–00252–JJ,
CV–02–000252–JJ.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 2005.

Decided Nov. 30, 2005.

As Amended on Denial of Rehearing and Rehearing En Banc Jan. 23, 2006.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Linda Johannsen, Esq., Preston Gates & Ellis, L.L.P., Portland, OR, for Plaintiff–Appellant.

William M. Gantz, Piper Rudnik, Chicago, IL.

Jeffrey M. Hamerling, Esq., Jamie Scott Peterson, Piper Rudnick LLP, San Francisco, CA, Paul G. Dodds, Angela M. Russell, Miles Sweeney, Brownstein, Rask, Sweeney, Kerr, Grim & Desylvia, Portland, OR, for Defendants–Appellees.

Before FISHER, GOULD, and BEA, Circuit Judges.

## MEMORANDUM *

Beginning in 1997 and lasting until its dissolution in 2001, Interesting Exhibits (IE) reported losses on its tax returns and allegedly borrowed substantial amounts of money from its president, director and sole shareholder, Ray L. Gorder. IE subcontracted the construction of a number of displays to Rapid Displays (Rapid) on May 24, 2000. IE paid one third of Rapid's invoice up front, and Rapid extended credit to IE for payment of the remainder at a later date. IE alleged that Rapid had not performed adequately under the subcontract and refused to pay the balance of Rapid's invoice. Rapid brought a claim for the unpaid amount and IE stipulated to it. Seeking payment as a judgment creditor, Rapid brought another suit, this time against Gorder, Imagination/Fabrication (IF)—a new company Gorder formed as IE was being wound down—and other parties. Rapid won a modest amount of damages in district court, and is now appealing that amount. Gorder is also appealing the amount of damages awarded. We reverse the district court's damages award in part, affirm in part and remand for recalculation of damages. Because the parties are familiar with the facts, we do not recite them in detail.

### I.

■ The district court erred when it accepted Gorder's assertion that IE owed Gorder hundreds of thousands of dollars in virtually undocumented "loans," which Gorder "issued" to help keep IE financially afloat. Because Gorder was a shareholder, indeed the *sole* shareholder, of IE,

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Oregon law subjects his transactions with IE to "strict scrutiny, and unless [he] sustains [his] burden to show that those transactions were part of an arms-length bargain, equity will set them aside." *Houston's, Inc. v. Hill,* 111 Or.App. 502, 826 P.2d 644, 647 (1992). Oregon deems a loan from a shareholder to the corporation in which he owns shares to be a capital contribution "if it is made ... when no other disinterested lender would have extended credit." *Id.* at 646–47.

Based on the record before us on appeal, we conclude that Rapid was a disinterested lender extending credit to IE when it agreed to defer two thirds of the amount due under its invoice on May 24, 2000. The district court found that Gorder knew IE was insolvent by May 10, 2001 and that same month KeyBank, IE's secured creditor, called its outstanding loan to IE. Applying Oregon law, we hold that no other disinterested lender would have extended credit to IE on May 9, 2001, and Gorder's "loan" in the amount of $168,141.71 issued to IE on that day was actually a capital contribution. As both Rapid and Gorder acknowledge, creditors receive priority over shareholders in the distribution of a corporation's assets upon its dissolution. *See, e.g.,* Or.Rev.Stat. § 60.637 (2001). Therefore upon the winding up of its affairs, IE owed Gorder at least $168,141.71 less than the district court calculated.

■ Furthermore, the district court found that "Gorder and IE's accountants were aware that IE was ... in financial peril" by the end of 2000 or early 2001, and it may be that no disinterested lender would have extended credit to IE at that time. Gorder, however, continued to "loan" funds to IE in 2000 and early 2001 despite IE's financial peril. Accordingly,

we remand to the district court to determine the date between May 24, 2000 and May 9, 2001 when a disinterested lender would no longer have extended credit to IE, and we instruct the district court to subtract any amounts Gorder claims to have loaned to IE after such date from the total IE owed Gorder as a creditor.[1]

## II.

Directors of an insolvent Oregon corporation have a fiduciary duty to "hold the assets of the corporation as a trust fund for equal distribution among its creditors ... whenever the fact that it must discontinue business by reason of the insolvency comes to their knowledge." *Gantenbein v. Bowles,* 103 Or. 277, 203 P. 614, 619 (1922). "[T]hey cannot use those assets to prefer themselves as creditors ... to the prejudice of general creditors." *Id.* That duty first attaches to directors when they have "a reasonable belief founded upon probabilities having reference to the company's affairs ... [i.e.,] that it is *probably insolvent." Id.* (emphasis added). In construing a director's knowledge, courts are to reject a director's "claim to have acted in ignorance of what it was his duty to know concerning the conduct and condition of the affairs of the corporation." *Id.*

■ The district court found that Gorder, the sole director of IE, knew IE was insolvent by May 10, 2001, but this is not a finding of when Gorder *first* knew that IE was "probably insolvent" under the *Gantenbein* "trust fund" doctrine. The district court suggests such knowledge may have come as early as the end of 2000 or early 2001 when "Gorder and IE's accountants were aware that IE was ... in financial peril," but the district court's findings on

1. Because we are remanding to the district court to recalculate the amount of IE's indebtedness to Gorder, Gorder's contention on cross-appeal that the district court made a mathematical error when it estopped Gorder from "recharacterizing" a boat and a beach house as his personal property rather than IE's property is moot.

this issue are ambiguous. We therefore affirm the district court's reliance on *Gantenbein* as the controlling legal precedent, but remand for the district court to determine the date when Gorder first had a "reasonable belief" that IE was "probably insolvent" and therefore "must discontinue business." *Gantenbein*, 203 P. at 619. We instruct the district court to calculate both (i) IE's total assets that should have been held in trust on behalf of its creditors and (ii) IE's total indebtedness (to both secured and unsecured creditors) as of that date.

## III.

■ Under Oregon's Uniform Fraudulent Transfer Act (UFTA), *see* Or.Rev. Stat. §§ 95.200–310, "a plaintiff can prove fraud in two ways: (1) that the transfer was made 'with actual intent to hinder, delay, or defraud any creditor[,]' ORS 95.230(1)(a); or (2) that the transfer constituted constructive fraud due to inadequate consideration for the property conveyed and the insolvency or near insolvency of the debtor. ORS 95.230(1)(b); ORS 95.240." *Doughty v. Birkholtz*, 156 Or.App. 89, 964 P.2d 1108, 1112 (1998). With respect to the post-July 2001 transfers of assets from IE to Gorder and IF, Gorder's new company, that the district court held violated Oregon's *Gantenbein* "trust fund" doctrine, Rapid's appeal of the district court's holding that "Rapid ... has not established that Mr. Gorder violated Oregon law by making ... fraudulent transfers"

is moot. Rapid has not shown that it would be entitled to greater relief under the UFTA than under *Gantenbein* with respect to such post-July 2001 transfers.

■ However, Or.Rev.Stat. § 95.230 encompasses a debtor's transfers which are "fraudulent as to a creditor, whether the creditor's claim arose *before or after* the transfer was made ..." (emphasis added).[2] It is not clear to what extent the district court considered potentially fraudulent transfers by IE effected before July 2001 or before May 24, 2000, the date of IE's contract with Rapid. On the one hand, without finding any of the following transfers fraudulent, the district court made what it considered a number of "appropriate adjustments" (i.e., deductions) to the amount IE asserted it owed Gorder including (i) "expenses related to the boat and the beach house" paid by IE even though Gorder later claimed both were his personal property, (ii) "payments [by IE] to Edna Shaw"—Gorder's mother-in-law—for a promissory note issued by Gorder and his wife, and (iii) "row house expenses," which Gorder owed in his personal capacity.[3] [ER 38] On the other hand, the district court stated that despite Rapid's counsel's "suggest[ion] that the Court look back to 1997 and 1998 to see what was done inappropriately and factor that in[,] ... this case really starts at or about the time of contract between Rapid Displays and IE." [ER 480]

2. We do not consider Rapid's related UFTA claim under Or.Rev.Stat. § 95.240 because Rapid did not plead a cause of action under that separate statute in its first amended complaint before the district court.

3. Based on "records concerning leases and lease payments [that] are complicated .and inconsistent," the district court also found that any unpaid rent IE allegedly owed Gorder (and other entities he owned) was can-

celled out by (i) IE's payment for property repairs for which it was not responsible, (ii) its probable overpayment of certain lease amounts and (iii) its non-receipt of revenues from certain subleases. [ER 38–39] Again, the district court did not rule any of these transfers of IE's assets "fraudulent" as to Rapid, but it did employ them to cancel out a certain amount of unspecified indebtedness IE claimed it owed Gorder.

Therefore, we remand Rapid's cause of action pursuant to Or.Rev.Stat. § 95.230 to provide the district court with the opportunity consider potentially fraudulent transfers by IE both before *and* after May 24, 2000.

## IV.

■ Because Oregon provides a statutory cause of action only to a corporation and not to its creditors for unlawful distributions made by corporate directors, we affirm the district court's dismissal of the unlawful shareholder distribution theory of liability. *See* Or.Rev.Stat. § 60.367(1).[4]

However, we note that a finding of unlawful distributions from IE to Gorder may be relevant to the fraudulent transfer inquiry, *see supra* Section III. To the extent that Gorder's cash transfers to IE were capital contributions under *Houston's,* 826 P.2d at 647, any repayments by IE to Gorder of such recharacterized "loans" should also be recharacterized as dividends. Or.Rev.Stat. § 60.181(3)(b) requires a "corporation's total assets [to] at least equal the sum of its total liabilities" after giving effect to a distribution to its shareholders. Yet according to IE's own tax returns, IE's total liabilities were greater than its total assets at the beginning and end of both 2000 and 2001. [ER 536, 558] If the district court finds that Gorder paid himself dividends from IE in violation of Or.Rev.Stat. § 60.181(3)(b), that may be relevant to a determination of fraudulent transfers under the UFTA even though Rapid has no cause of action under Or.Rev.Stat. § 60.367(1).[5]

## V.

■ The Oregon Supreme Court has stressed that "[t]he disregard of a legally established corporate entity is an extraordinary remedy which exists as a last resort, where there is no other adequate remedy to repair the plaintiff's injury." *Amfac Foods, Inc. v. Int'l Sys. & Controls Corp.,* 294 Or. 94, 654 P.2d 1092, 1098 (1982). We need not consider the extreme remedy of piercing the corporate veil because Rapid is likely to receive adequate, if not full, satisfaction for its claims under the alternative theories of recovery discussed above. We therefore affirm the district court's holding that the corporate form of IE and IF should not be disregarded.

## VI.

Rapid's First Amended Complaint requested an award of attorney's fees. Oregon's "general rule [is] that attorney fees are not recoverable in the absence of a statute or contractual provision authorizing the award." *Lewis v. Dep't of Revenue,* 294 Or. 139, 653 P.2d 1265, 1267 (1982). Oregon does recognize, however, "the inherent power of a court in equity to award attorney fees...." *Id.* Rapid's contract with IE makes no mention of attorney's fees. Rapid also did not cite any specific Oregon statute under which it was entitled to collect attorney's fees if it prevailed.

---

4. Or.Rev.Stat. § 60.367(1) reads in its entirety:

> Unless the director complies with the applicable standards of conduct described in ORS 60.357, a director who votes for or assents to a distribution made in violation of this chapter or the articles of incorporation is personally liable to the corporation for the amount of the distribution that exceeds what could have been distributed without violating this chapter or the articles of incorporation.

5. A dividend paid by an Oregon corporation in violation of Or.Rev.Stat. § 60.181(3)(b) could be construed as a transfer made "[w]ithout receiving a reasonably equivalent value in exchange...." Or.Rev.Stat. § 95.230(1)(b).

■ However, the district court did grant Rapid's unopposed motion during the pre-trial conference to bifurcate the trial into a liability phase and an attorney's fees and punitive damages phase: "without prejudice to [Rapid's] claims for either attorney's fees or punitive damages, [the court] will allow [Rapid] to reserve putting on any testimony or making argument on those two issues until the underlying liability issues have been resolved." [ER 149] Despite this ruling and without proceeding with an attorney's fees and punitive damages phase of trial, the district court summarily held that Rapid was "not entitled" to such fees or punitive damages. [ER 40] Because Rapid's First Amended Complaint included a claim for attorney's fees which was preserved in the pre-trial conference ruling, we remand to the district court to consider whether Rapid has any valid claim for attorney's fees under Oregon law.

Rapid's First Amended Complaint did not, however, include a claim for punitive damages, notwithstanding its representation to the district court that it did. Therefore, we affirm the district court's denial of punitive damages payable to Rapid.

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this disposition.